GAIDRY, J.
 

 |2In this redhibition suit stemming from the sale of a motorcycle, defendants appeal a judgment rescinding the sale and awarding plaintiff the original purchase price, expenses associated with maintaining the motorcycle, and attorney’s fees. We reverse.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiff, Eric Cazaubon, purchased a 2006 Kawasaki ZX1400 from Cycle Sport, LLC on September 30, 2006. On April 17, 2007, Mr. Cazaubon allegedly tendered the motorcycle to Cycle Sport for repairs. When the motorcycle still remained at Cycle Shop, unrepaired, on July 20, 2008, Mr. Cazaubon filed this suit in redhibition against Cycle Sport and Kawasaki Motors Corporation, U.S.A., the manufacturer of the motorcycle. Mr. Cazaubon requested a reduction in the sale price, or a recision of the sale.
 

 Cycle Sport answered the suit alleging that when Mr. Cazaubon returned the motorcycle for repairs, it had been modified and used for purposes which voided the warranty. Based upon this, Cycle Sport advised Mr. Cazaubon that no repairs could be made until he guaranteed payment for the repairs. Since he refused to do so, the motorcycle was not repaired. Further, Cycle Sport alleged that since all needed repairs were a result of plaintiffs modification and unauthorized use of the motorcycle, they did not exist at the time of the sale and thus are not redhibitory defects.
 

 After a bench trial, the trial court found that the motorcycle had a defective engine and defective frame which rendered its use so inconvenient that Mr. Cazaubon would not have purchased it had he known of the defects, thereby entitling Mr. Cazaubon to a recision of the sale. Accordingly, the trial court rendered judgment in favor of Mr. Cazaubon and against Cycle |sSport and Kawasaki
 
 in solido
 
 in the amounts of $10,500.00 (the purchase price of the motorcycle) and $2,508.00 (the cost of preserving the motorcycle) and against Kawasaki in the amount of $7,500.00 (attorney’s fees). Cycle Sport and Kawasaki filed the instant appeal.
 

 DISCUSSION
 

 Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which either renders it absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. La. C.C. art. 2520;
 
 Belle Pass Terminal, Inc. v. Jolin, Inc.,
 
 634 So.2d 466, 494,
 
 writ denied,
 
 638 So.2d 1094 (La.1994). A purchaser may also request a reduction in the price of the thing where the lack of quality of the thing purchased is not of such importance as to warrant complete avoidance of the sale.
 
 Id.
 
 Both actions are subject to the same burden of proof.
 
 Id.
 

 In order to establish a prima fa-cie case of redhibition, a purchaser must show that a non-apparent defect existed at the time of the sale. La. C.C. art. 2520 and 2530;
 
 Belle Pass Terminal, Inc.,
 
 634 So.2d at 494. “Defect” as contemplated in article 2520 means a physical imperfection or deformity or a lacking of the necessary components or level of quality.
 
 Id.
 
 Apparent defects which the purchaser might have discovered by simple inspection are not redhibitory defects. La. C.C. art. 2521.
 

 Once the purchaser establishes a prima facie case, the burden shifts to the seller to show that he can somehow escape liability.
 
 Belle Pass Terminal, Inc.,
 
 634 So.2d at 494. Whether or not a thing is
 
 *1066
 
 defective is a factual determination to be made by the trier of fact, which determination will not be set aside on appeal absent manifest error.
 
 Id.
 

 |4The trial court in this case made a factual determination that the engine on Mr. Cazaubon’s motorcycle was defective. The evidence presented at the trial concerning the alleged engine problem is as follows:
 

 Mr. Cazaubon testified that he first brought the bike into Cycle Sport over six months after he purchased it, complaining of an engine rattle. He had owned another bike just like this one that made a similar noise and had been repaired by Cycle Sport under the warranty. Based upon this experience, he believed he knew what the problem was and which parts needed to be changed to correct the problem. When he brought his bike into Cycle Sport on April 17, 2007, he told Dane Beagle, the service manager at the time, that the engine was making noise, and he helped Dane take the clutch cover, oil pan, exhaust, and side covers off to try to see what was wrong. He determined that one of the rods had some “play” in it and believed that the problem was similar to the problem with his other bike. He testified that Dane told him that the repair would be covered by the warranty and that he would order the parts.
 
 [1]
 
 Mr. Cazaubon left the bike at Cycle Sport, where it sat for over a year without being worked on. He testified that he was told that the reason the bike was not being repaired was that Cycle Sport was having personnel problems. When a mechanic finally started to look at the bike, it was discovered that the frame was cracked. At that point, Mr. Cazaubon told the defendants that he did not want that bike back because the frame was cracked and because it had been at Cycle Sport for so long. He testified that he did not know if there was anything wrong with the bike at the time of trial because he had never gone back to get it or to examine it again after dropping it off on April 17, 2007.
 

 | ¿Robert Miller, the owner of Cycle Sport, did not dispute that Mr. Cazaubon brought the bike in complaining of a knock or rattle and that parts were ordered by the service manager. He also admitted that he had no knowledge of what was told to Mr. Cazaubon at that time by the service manager concerning warranty coverage for the repairs. However, he testified that Mr. Cazaubon took the bike home on April 17, 2007 to wait for the parts to come in and did not bring it back in until August, and at that time he personally told Mr. Cazaubon that the repairs would not be covered by the warranty because the bike had been engaged in competitive racing, which voided Kawasaki’s warranty. He testified that Mr. Cazaubon had told him that he raced the motorcycle and he had also seen video of Mr. Cazaubon racing the motorcycle. As a result, he told Mr. Cazaubon that he would have to guarantee payment for the repairs before they would begin working on the bike. Mr. Miller claimed that when he told Mr. Ca-zaubon that the repairs would not be covered, Mr. Cazaubon initially said that he would contact Kawasaki himself to try to get it covered, then changed his mind and said that he would just pay Cycle Sport to put in a new motor that he would provide. When the mechanic took out the old motor on Mr. Cazaubon’s motorcycle to start working on it, he discovered that the frame was cracked, so he ordered a new frame and replaced it. No repairs were ever done to the engine, and Mr. Miller did
 
 *1067
 
 not believe that there was ever anything actually wrong with the engine. This opinion was based on his assertion that Cycle Sport’s employees started the motorcycle almost every day to move it in and out of the shop and never heard any noise. Although they did not test out the motor initially because Mr. Cazaubon had removed the exhaust, after this litigation began Cycle Sport put a stock exhaust on the bike and tested it and found nothing wrong. Cycle Sport then sent the bike | fito another dealership, D & L Power Sports, who tested it and confirmed that there was nothing wrong with the motorcycle.
 

 Brian Lambert, Cycle Sport’s head mechanic, testified that he had no knowledge of what the service manager told Mr. Ca-zaubon when he first came in with the bike or what parts were ordered for the bike. However, none of the parts ordered by the service manager were ever used on the bike. The only work Mr. Lambert ever did on the bike was between June and August of 2008. At that time, he took the engine out and inspected the rod bearings and crank bearings to make sure there was no damage before putting it all back together. After reassembling the bike, he put a stock exhaust on it because Mr. Cazaubon had removed the exhaust, and then he started it and rode it. He testified that when he rode it, there were no noises, no hesitations, and the bike rode just like it should.
 

 Antonio Scanduro, the service manager for D & L Power Sports, performed a Dynotest on Mr. Cazaubon’s motorcycle at the request of Cycle Sport to find any problems with the motorcycle. He testified that he first did a physical inspection of the bike. He started the bike at idle, listened to it, and everything sounded fine. He then test-drove it in the parking lot in first and second gear, and everything still felt fine. Finally, he put it on a Dyno machine, which allowed him to test the bike at its full potential without endangering a rider or breaking the speed limit on the street. He found nothing at all abnormal with the bike.
 

 The trial court made a finding of fact that Mr. Cazaubon and the Cycle Sport Service Manager looked at the bike when it was first brought in and diagnosed the engine problem. The court also found that Mr. Cazaubon did not race or abuse the motorcycle. Based upon these facts, the trial court concluded that the motorcycle engine had a redhibitory defect. Although a 17trial court’s finding of fact may not be set aside in the absence of manifest error or unless it is clearly wrong, we find the trial court’s conclusion that the engine was defective, based on the evidence before it, to be clearly wrong. There was no evidence offered to prove that anything was ever actually wrong with the engine. Cycle Sport and D & L Power Sports both examined the engine and found nothing wrong. Mr. Cazaubon did not have a mechanic examine the bike. The only evidence he presented was his own testimony that he looked at the bike with the service manager (who did not testify) and knew what was wrong. Finally, Mr. Cazaubon testified at trial that he did not know if there was anything wrong with the bike’s engine. Based upon this, we find that Mr. Cazaubon failed to carry his burden of proof that the bike was defective, and the court was clearly wrong in concluding that the bike had a defective engine.
 

 The trial court also concluded that the motorcycle frame was defective. It is unclear from the testimony presented at trial when or why the frame cracked on the bike. When the crack was initially discovered by Mr. Lambert at Cycle Sport, he
 
 *1068
 
 did not know whether it had been cracked during the engine removal by over-torquing, but he nonetheless contacted Kawasaki and ordered a new frame. Kawasaki’s phone logs show that Mr. Cazaubon called on May 30, 2008 demanding a replacement motorcycle because Cycle Sport pulled the engine and cracked the frame and he did not think that Cycle Sport was competent enough to replace the frame and he did not want to travel to take the bike to another dealer. Around the same time the crack in the frame was discovered, Kawasaki issued a recall on the frames due to cracking near the welds. Kawasaki sent a representative to Cycle Sport to inspect the frame to attempt to determine whether the cracking was due to the recall or due to over-torquing when the engine was removed. The [ ^Kawasaki representative was unable to say for sure how the frame had been cracked, although he suspected over-torquing due to the location and appearance of the cracks. However, because they could not say for sure what caused the cracking, Kawasaki supplied a brand new frame at no cost, and Cycle Sport replaced the cracked frame with the brand new frame at no cost to Mr. Cazau-bon. At the time this suit was filed, the bike had a brand new frame. No evidence was presented that there was any problem with this new frame. Therefore, it is unclear on what basis the court concluded that the frame on the bike was a redhibi-tory defect. The evidence presented at trial simply does not support the conclusion that the frame is defective. Therefore, the court’s conclusion that the frame is defective is clearly wrong.
 

 Because we have found that the court erred in finding that a redhibitory defect existed, the trial court’s judgment rescinding the sale and awarding damages must be reversed.
 

 CONCLUSION
 

 The judgment appealed from is reversed. Costs of this appeal are assessed to plaintiff, Eric Cazaubon.
 

 REVERSED.
 

 HUGHES, J., concurs.
 

 [1]
 

 . Dane Beagle was fired by Cycle Sport some time after this and was not called to testify by either side at trial.