STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

13-179


GEORGE L. BRUCE

VERSUS

FORD MOTOR COMPANY, ET AL.


**********

APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, DOCKET NO. 2010-CV-00236
HONORABLE J. PHILLIP TERRELL, JR., CITY COURT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Jimmie C. Peters, James T. Genovese, Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

Conery, J., dissents and assigns reasons.

AFFIRMED IN PART;
REVERSED IN PART;
AND RENDERED.

Fred A. Pharis
Pharis Law Offices
831 DeSoto Street
Alexandria, Louisiana  71301
(318) 445-8266
COUNSEL FOR PLAINTIFF/APPELLEE:
    George L. Bruce

**Carl J. Giffin, Jr.**
**Robert W. Maxwell**
**Howard B. Kaplan**
**Bernard, Cassisa, Elliott & Davis**
**1615 Metairie Road**
**Post Office Box 55490**
**Metairie, Louisiana 70055-5490**
**(504) 834-2612**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 **Ford Motor Company, Inc. and**
 **Marler Ford Company, Inc.**

**GENOVESE, Judge.**

In this redhibition suit, Defendants, Ford Motor Company, Inc. (Ford Motor Company) and Marler Ford Company, Inc. (Marler Ford), appeal the judgment of the trial court in favor of Plaintiff, George L. Bruce, awarding him the purchase price of the vehicle, expenses, and attorney fees. Mr. Bruce has answered the appeal seeking an increase in the attorney fee award for work performed on post-trial motions and on appeal. For the following reasons, we affirm in part, reverse in part, and render.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 2008, Mr. Bruce purchased a 2007 Ford F-150 with 8,904 miles from Marler Ford and paid $30,118.63 for the truck and related expenses.[1] The truck was a certified pre-owned vehicle and, therefore, was covered by a warranty. Mr. Bruce subsequently brought the truck in on several occasions for maintenance and repairs.

Due to continuing unresolved problems with the truck, Mr. Bruce instituted this redhibition action, naming Ford Motor Company and Marler Ford (sometimes collectively referred to as Ford herein) as defendants. Mr. Bruce's petition set forth multiple occasions when he brought the truck in for repairs and prayed for a rescission of the sale with a return of its purchase price, incurred expenses, interest, and attorney fees.

Following a trial on the merits, the trial court rendered judgment in favor of Mr. Bruce for $35,917.72,[2] plus legal interest and court cost. The trial court also awarded Mr. Bruce $17,000.00 in attorney fees. Thereafter, Ford filed a motion

---

[1]The price of the truck and the related expenses included the cash price ($24,995.00), finance charges ($2,718.53), amounts paid to public officials ($740.10), and an extended warranty ($1,665.00), for a total of $30,118.63.

[2]The amount of the judgment represents the cash price, finance charges, fees, extended warranty, insurance costs, costs of repairs, and tire replacement.

for new trial, and Mr. Bruce filed a motion to increase the attorney fee award. Following a hearing, the trial court denied both motions. Ford has appealed the trial court's judgment in favor of Mr. Bruce, and Mr. Bruce has answered the appeal relative to an increase in attorney fees.

## ASSIGNMENTS OF ERROR

On appeal, Ford presents the following assignments of error for our review:

### I.

The trial court erred in rendering judgment in favor of [Mr. Bruce] because there was no evidence or the evidence was insufficient to support its finding that a "defect" existed in the Ford F-150 "Super Cruiser" at the time it was delivered to [Mr. Bruce].

### II.

In the alternative, the trial court erred by awarding [Mr. Bruce] the full sales price of the F-150 instead of a reduction in its price, given that [Mr. Bruce] drove the truck over 67,000 miles throughout a three-year period.

### III.

The trial court erred in awarding to [Mr. Bruce] an excessive amount of attorney[] fees for a case of this nature.

## LAW AND DICUSSION

The standard of review to be applied in this case was recently set forth in *Thibodeaux v. Kaufman Trailers, Inc.*, 12-885, pp. 2-3 (La.App. 3 Cir. 2/6/13), 108 So.3d 1283, 1285-86, wherein we stated:

The existence of redhibitory defects is a question of fact, and the trial court's conclusions about them should not be set aside absent manifest error. *Parker v. Dubus Engine Co.*, 563 So.2d 355 (La.App. 3 Cir.1990). An appellate court may not set aside a trial court's finding of fact absent manifest error or unless the fact finder is clearly wrong. *Lewis v. State, Through Dep't of Transp. and Dev.*, 94-2370 (La.4/21/95), 654 So.2d 311; *Thomas v. Albertsons, Inc.*, 28,950 (La.App. 2 Cir. 12/11/96), 685 So.2d 1134, *writ denied*, 97-0391 (La.3/27/97), 692 So.2d 395.

2

*Sufficiency of Evidence*

An action in redhibition arises pursuant to Louisiana Civil Code Article 2520, which provides:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

In the instant matter, the trial court found that "[a]lmost immediately[,] a litany of minor problems and others not so minor manifested themselves. The most significant event in the [c]ourt's mind occurred when the vehicle accelerated on its own in traffic and once again at [Mr. Bruce's] residence." The trial court expressly noted "that the throttle body and vehicle's transmission were also replaced at one point[,]" and "a long series of complaints and attempted repairs including numerous minor repairs, or at least less serious ones, were made." Accepting Mr. Bruce's testimony that he would not have purchased this vehicle had he known it had been titled prior to his purchase, or had he known of the defects, and considering the evidence that "[n]umerous complaints and attempts at repairs were made by both Marler and a dealership in Natchez, Mississippi[,]" the trial court found that Mr. Bruce was entitled to a rescission of the sale. We find no manifest error in this finding, and we affirm same.

In its first assignment of error, Ford asserts that Mr. Bruce failed to prove the existence of a defect. We disagree.

3

> "A buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects." *Young v. Ford Motor Co., Inc.*, 595 So.2d 1123, 1126 (La.1992); *Crawford v. Abbott Automobile Co.*, 157 La. 59, 101 So. 871 (1924). The buyer in a redhibition action is also not required to negate all other causes of a defect. *Ewing and Salter, Inc. v. Gafner Automotive & Mach., Inc.*, 392 So.2d 762 (La.App. 3 Cir.1980), *writ denied*, 396 So.2d 933 (La.1981). "The buyer may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale." *Rey*[ *v. Cuccia*], 298 So.2d [840,] 843 [(La.1974)].

*Bonnette v. Ford Motor Co.*, 11-1274, pp. 4-5 (La.App. 3 Cir. 3/7/12), 88 So.3d 1164, 1168.

Ford argues that Mr. Bruce's "case is entirely based upon his experience of symptoms—engine surge and unintended acceleration—that, despite Ford's extensive efforts[,] were never duplicated, and the cause of which was never identified, not even by [Mr. Bruce] himself." However, Mr. Bruce does not bear the burden of showing the cause of the problems that he experienced with the vehicle. In fact, the record bears out that Ford itself never identified the source of this repeated complaint because the vehicle was not "throwing codes" to indicate the source of the problems.[3]

In addition to Mr. Bruce's primary complaint of the engine surging, there is ample evidence in the record establishing what the trial court described as a "litany" of problems. These additional problems included a "stumbling" or hesitation of the engine, various lights/indicators flashing, gauges failing completely, a dead battery on two occasions, the transmission needing

---

[3]Ford makes much of its inability to duplicate the engine surge and of Mr. Bruce's decline of Ford's offer to install a "Vehicle Data Recorder (VDR)[.]" However, Ford's expert, qualified in automotive mechanics and repair of Ford vehicles, Chris Furnas, testified that when Ford had the vehicle, they were using a diagnostic tool known as an "IDS" that actually provides more data and can document a vehicle's condition better than a VDR. Additionally, he conceded that there can be a vehicle malfunction that occurs without a code being shown.

replacement, a throttle body twice needing replacement, repair and replacement of electrical wiring, and repair of a leaking intake gasket.

Ford contends that some of the "repairs" considered by the trial court were actually only routine maintenance and minor repairs that were done at no charge to Mr. Bruce. While this is true to some extent, many other "repairs" were much more significant problems, such as replacement of the throttle body (twice) and replacement of the transmission. All of these problems required the vehicle to be brought in for repair and were in addition to the multiple failed attempts to have the recurring problem of the engine surge fixed. The jurisprudence is clear that "[w]hile a minor defect or defects alone may not rise to the level of a redhibitory defect, multiple minor defects, even when repaired, may support a claim for redhibition." *Jones v. Winnebago Indus., Inc.*, 47,137, p. 7 (La.App. 2 Cir. 5/16/12), 92 So.3d 1113, 1118 (citing *Berney v. Roundtree Olds-Cadillac Co. Inc.*, 33,388 (La.App. 2 Cir. 6/21/00), 763 So.2d 799). Thus, this assignment of error has no merit.

Ford also argues that a separate personal injury lawsuit for damages brought by Mr. Bruce against his son, alleging that his son was at fault in the operation of this same truck in a car-washing incident, constituted a "judicial admission." In that separate lawsuit, Mr. Bruce alleged that his son operated the truck in an "unsafe, imprudent, reckless[,] and careless manner." There were no allegations against Ford in the separate lawsuit. There was no judicial confession related to the instant redhibition lawsuit. Even assuming there was some sort of judicial confession in the separate lawsuit, there were numerous instances of multiple defects relating to the truck. This is a manifest error case. We cannot say that the trial judge was clearly wrong or committed manifest error.

5

*Rescission of Sale/Reduction in Price and Credit for Use of Vehicle*

In its second assignment of error, Ford asserts error in the trial court's award of the full sales price of the vehicle. It asserts that even if Mr. Bruce met his burden of proof in his redhibition claim, he would only be entitled to a reduction in the sales price of the vehicle. Alternatively, Ford argues that it is entitled to a credit to account for Mr. Bruce's use of the vehicle for a three-year period and putting approximately 67,000 miles on said vehicle. We agree, in part, with this contention.

In *Thibodeaux*, 108 So.3d at 1287, this court discussed a purchaser's remedy in redhibition, stating as follows:

> If a purchaser buys a new vehicle with defects, and those defects render the use of that vehicle inconvenient or imperfect to the extent that the buyer would not have purchased the vehicle if he had known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the purchase price.

In this case, Mr. Bruce testified that he would not have purchased the vehicle if Ford had told him that it had been previously titled and leased, or had he known of the defects. Therefore, we find that the record fully supports the trial court's ruling that Mr. Bruce was entitled to obtain a rescission of the sale as opposed to a reduction in the sales price. *Id*; La.Civ.Code art. 2520.

We do agree, however, that Ford is entitled to a credit for Mr. Bruce's use of the vehicle. Ford argues on appeal that "[a]t minimum, [it] is entitled to a credit for [Mr. Bruce's] excessive use of the truck over a three year time period[.]" Mr. Bruce's "response is that Ford did not only not provide any basis for the value of the use, any use would be overridden by the constant manifestations of multiple defects causing multiple repairs at two different Ford dealerships and the inconveniences associate[d] therewith."

Louisiana Civil Code Article 2531 provides that a seller is entitled to a credit "if the use made of the thing, or the fruits it has yielded, were of some value to the buyer." Based upon our review of the record, we find that Ford met its burden of proof pursuant to La.Civ.Code art. 2531. Unequivocally, the use of the vehicle for three years and putting approximately 67,000 miles on the vehicle establishes that it was of some value and use to Mr. Bruce. While cognizant of the burdensome and considerable inconvenience experienced by Mr. Bruce, and given his extensive use of the vehicle, and in balancing same, we find that Ford is entitled to a credit for such use in the amount of $15,000.00. Accordingly, the judgment of the trial court in favor of Mr. Bruce in the amount of $35,917.72 is reversed and vacated, and we render judgment herein in the amount of $20,917.72.

### *Attorney Fees*

In its final assignment of error, Ford argues that the trial court erred in awarding Mr. Bruce excessive attorney fees. In Mr. Bruce's answer to appeal, he asserts error by the trial court in failing to award him attorney fees to account for post-trial and appellate work performed by his counsel.

> A trial court has great discretion in awarding attorney fees in a redhibition case. *Health Education and Welfare Federal Credit Union v. Peoples State Bank*, 11-672 (La.App.3d Cir.12/07/11), 83 So.3d 1055; *Dailey v. The Home Furnishings Store*, 02-1225 (La.App.4th Cir.09/17/03), 857 So.2d 1051. Before an attorney's fee award will be disturbed[,] the record must reveal that the trial court abused its much discretion in making the award. *Smith v. Acadiana Mortg. of Louisiana, Inc.*, 42,795 (La.App.2d Cir.01/30/08), 975 So.2d 143; *Health Education and Welfare Federal Credit Union, supra*; *Buteau v. Leleux*, 591 So.2d 1261 (La.App. 3d Cir.1991).

*Jones*, 92 So.3d at 1119-20.

Louisiana Rules of Professional Conduct, Rule 1.5, addresses attorney fees and provides:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The

factors to be considered in determining the reasonableness of a fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

> (8) whether the fee is fixed or contingent.

In this case, Mr. Bruce and his counsel entered into a contract whereby they both agreed to a charge of $300.00 per hour for the amount of attorney fees, regardless of the outcome of the matter. Mr. Bruce's counsel submitted a detailed affidavit outlining the time he spent working on the case. Though $300.00 per hour is arguably on the high side for a case of this type, we cannot say that the attorney fee award of $17,000.00, based upon a charge of $300.00 per hour, is an abuse of discretion, considering that counsel has effectively shown his experience in this area of the law and the time he expended, including a trial on the merits, with no countervailing evidence having been presented by Ford relative to excessive attorney fees.

In his answer to appeal, Mr. Bruce seeks additional attorney fees for post-trial work and work performed on appeal. Considering Mr. Bruce's success,

in part, on appeal, we award him an additional $1,500.00 in attorney fees for work done on appeal.

**DECREE**

Based on the foregoing, we affirm the judgment of the trial court in favor of George L. Bruce decreeing a rescission of the sale. The trial court's award of $17,000.00 in attorney fees is also affirmed. The judgment of the trial court awarding Mr. Bruce $35,917.72 is reversed and vacated, and we render judgment herein in favor of George L. Bruce and against Ford Motor Company, Inc. and Marler Ford Company, Inc. in the amount of $20,917.72. Additionally, we render judgment herein in favor of Mr. Bruce in the amount of $1,500.00, representing attorney fees for work done on appeal. The costs of this appeal are assessed at seventy-five percent to Ford Motor Company, Inc. and Marler Ford Company, Inc. and twenty-five percent to George L. Bruce.

**AFFIRMED IN PART;**
**REVERSED IN PART;**
**AND RENDERED.**

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

GEORGE L. BRUCE

VERSUS

FORD MOTOR COMPANY, ET AL

**CONERY, J., dissents and assigns reasons.**

Plaintiff, Mr. George Bruce, paid Marler Ford $24,995.00 for a pre-owned pick-up truck with approximately 9,000 miles on it. The majority affirms the trial court judgment finding a redhibitory defect and ordering return of the purchase price, and damages. Mr. Bruce used the vehicle for over three years and drove over 67,000 miles. The majority reduces the trial court judgment by $15,000 for the use of the vehicle. The majority affirmed a $17,000 award for Mr. Bruce's attorney's fees, awarded additional attorney's fees for work on appeal, and assessed costs seventy-five percent to defendants and twenty-five percent to Mr. Bruce. I respectfully dissent and would reverse the trial court, dismissing plaintiff's claim with prejudice and at his cost.

The majority has correctly summarized much of the law applicable in this case. Further elaboration on a few key points will help illuminate the main issues of concern. A plaintiff filing a redhibition suit must show that a hidden defect existed at the time of the sale of the defective "thing," and *that it existed before delivery*. *A good faith seller* who had no knowledge of a defect is only obligated to "repair, remedy or correct" the defect. La.Civ.Code arts. 2520, 2530, and 2531. The buyer must show more than mere "symptoms." *Fidele v. Cresent Fort Truck*

*Sales, Inc.*, 00-1934, p. 9 (La. App. 5 Cir. 4/11/01), 786 So.2d 147, 153. *See Green v. Benson & Gold Chevrolet*, 01-1161 (La. App. 5 Cir. 2/26/02), 811 So.2d 970, *writ denied*, 02-0891 (La. 5/31/02), 817 So.2d 96; *Smith v. General Motors Acceptance Corp.*, 542 So.2d 831 (La.App. 3 Cir. 1991)*; Johns v. American Isuzu Motors, Inc.*, 622 So.2d 1208 (La.App. 2 Cir. 1993).

There is no evidence in the record to show that Marler Ford knew of a defect in the vehicle it sold to Mr. Bruce, hence the seller was a "good faith" seller and was only bound to "repair, remedy, or correct" any defect actually discovered or brought to its attention after purchase. La.Civ.Code art. 2531. There is a presumption that the defect existed at the time of delivery only if the defect manifests itself within three days of delivery. La.Civ.Code art. 2520. No "alleged" defects manifested within three days of delivery in this case. As a good faith seller, Marler Ford must be given an opportunity to "repair, remedy, or correct" any alleged defect. La.Civ.Code art. 2531.

In *Cazaubon v. Cycle Sport, LLC,* 11-0289, p. 3 (La.App. 1 Cir. 11/9/11), 79 So.3d 1063, 1065-6, the court noted:

> In order to establish a prima facie case of redhibition, a purchaser must show that a non-apparent defect existed at the time of the sale. La. C.C. art 2520 and 2530; *Belle Pass Terminal, Inc.,* 634 So.2d at 494. "Defect" as contemplated in article 2520 means a physical imperfection or deformity or a lacking of the necessary components or level of quality. *Id.* Apparent defects which the purchaser might have discovered by simple inspection are not redhibitory defects. La. C.C. art. 2521.
>
> Once the purchaser establishes a prima facie case, the burden shifts to the seller to show that he can somehow escape liability. *Belle Pass Terminal, Inc.,* 634 So.2d at 494. Whether or not a thing is defective is a factual determination to be made by the trier of fact, which determination will not be set aside on appeal absent manifest error. *Id.*

Like the trial court in *Cazaubon,* the trial court in this case concluded that Mr. Bruce met his burden of proving a redhibitory defect. Faced with the manifest error rule on appeal in *Cazaubon,* the appellate court conducted a review of the entire record to determine whether there was an adequate basis for the trial court's ruling. After thoroughly reviewing the facts in the record, the appellate court concluded:

> There was no evidence offered to prove that anything was ever actually wrong with the engine. Cycle Sport and D & L Power Sports both examined the engine and found nothing wrong. Mr. Cazaubon did not have a mechanic examine bike. The only evidence he presented was his own testimony that he looked at the bike with the service manager (who did not testify) and knew what was wrong. Finally, Mr. Cazaubon testified at trial that he did not know if there was anything wrong with the bike's engine. Based upon this, we find that Mr. Cazaubon failed to carry his burden of proof that the bike was defective, and the court was clearly wrong in concluding that the bike had a defective engine.

*Id.* at 1067.

Likewise, in this case, a careful review of the record leads this writer to the conclusion that no defect has been proven. The trial judge's conclusory statement that there was no evidence to refute plaintiff's case, and that he found plaintiff's complaints credible not only finds no support in the record, but, to the contrary, is refuted by the evidence in the record.

According to the record, Mr. Bruce bought a certified pre-owned Ford F-150 pick-up truck from Marler Ford on January 14, 2008. He also purchased an extended warranty. The odometer reading was 8,904 miles. The vehicle was first returned to Marler Ford on January 28, 2008, with an inoperable trailer light. A blown fuse was replaced. The odometer read 9,605 miles. There was no manifestation of a defect in the "thing" within three days of sale. A burnt fuse in a

trailer light fourteen days after sale is certainly not an indication of a redhibitory defect.

The next "repair" was done on February 25, 2008, mileage 14,038, some 5,134 miles and over 30 days later. Mr. Bruce complained that the air conditioner was malfunctioning, and that the vehicle was "missing," "running rough," and "dies on acceleration." Some of the gauges were inoperable. The vehicle was repaired under warranty at no cost to Mr. Bruce. A loaner vehicle was provided, as was the case with all warranty repairs in this case.

On July 7, 2008, at 21,490 miles, Mr. Bruce complained that when coming to a stop, the "vehicle will hesitate and then surge when going to accelerate and when trying to pass." Other minor problems including a power steering fluid cap and peeling emblems were repaired. After keeping the vehicle for eight days, mechanics at the dealership were unable to duplicate sudden acceleration or engine surge complaints.

Other minor repairs were made under warranty and some routine maintenance was performed. The truck would not start on two occasions. The batteries were replaced on both occasions. After the second replaced battery, it was discovered that Mr. Bruce had installed an after-market device that was draining the batteries. No further complaints of battery failure were noted after the device was removed.

The evidence showed that on May 27, 2009, over one year after purchase, and after driving the vehicle 26,659 miles, Mr. Bruce complained of engine surge when at a stop, that the engine was "missing," "running rough" and "shuddering." A diagnostic computer test run at the dealership demonstrated a "throttle body"

problem. The dealership installed a new throttle body under warranty, a relatively minor repair and certainly not a hidden defect in the "thing" at the time of sale.

Mr. Bruce again complained that the vehicle was "missing and running rough" one month later, on June 29, 2009. Another "throttle body" problem was found after 38,635 miles and again was replaced at no cost to Mr. Bruce. Again, a relatively minor problem that developed after extensive use was repaired pursuant to the warranty obligation.

On July 20, 2009, at 43,719 miles, Mr. Bruce again complained of engine surge and vehicle missing. The dealership kept the truck for ten days and drove it extensively with computer diagnostic equipment attached. According to the records, mechanics were unable to duplicate the problem.

Mr. Bruce has several similar complaints of engine surge, none of which would show on computer diagnostic testing and could not be duplicated at the dealership. Ford sent an expert mechanic, Chris Furnas, who ran a series of objective diagnostic tests, reviewed all of the repair records and could find no evidence of a vehicle defect. He, likewise, could not duplicate the "engine surge" complaint.

The only "major repair" to the truck was a transmission problem. Ford replaced the transmission under warranty at no cost to Mr. Bruce over three years after the sale on March 21, 2011, at 75,359 miles. By then, Mr. Bruce had driven the vehicle almost 67,000 miles, hardly evidence of a hidden redhibitory defect present at the time of the sale. A minor repair to the transmission was made shortly after replacement, after which Mr. Bruce parked the vehicle and sued.

Plaintiff argues and the majority agrees that "While a minor defect or defects alone may not rise to the level of a redhibitory defect, multiple minor defects, even

when repaired, may support a claim for redhibition," citing *Jones v. Winnebago Indus.*, 47-137, p.7 (La.App. 2 Cir. 5/16/12), 92 So.3d 1113, 1118 (citing *Berney v. Roundtree Olds-Cadillac Co. Inc.*, 33-388 (La.App. 2 Cir. 6/21/00), 763 So.2d 799).

*Jones* can be clearly distinguished from this case. In *Jones*, on plaintiffs' first trip in his brand new $189,000 RV, the motor home failed and was taken back to the dealership within three days of purchase. During the first year, the vehicle was out of service in the shop 242 days. As of trial, almost three years after purchase, only 2,904 miles were logged for recreational use.

The dealership's service manager was on plaintiff's side and testified that he thought all of plaintiffs' concerns were legitimate. He corroborated the problems had been occurring "from day one." He testified "that in all his experience in the RV service business, he had never seen another motor home with the number, type and breadth of problems that plaintiffs' RV had." *Id.* at 1117. The dealership was granted a directed verdict, as there was no evidence of defective repair. *The manufacturer* was held liable in redhibition.

The evidence here is almost exactly the opposite. No "defect" was proven at all. All of the dealership's mechanics and Chris Furnas, the expert Ford mechanic who examined and tested the vehicle, could not duplicate Mr. Bruce's "engine surge" complaints after extensive objective testing, and could find no evidence of any vehicle defect.

In *Berney*, the vehicle was a used 1995 Chevy Blazer with 49,148 miles on it at the time of purchase. The check engine light (CEL) was malfunctioning within three days of purchase. Numerous relatively minor problems were noted and corrected under extended warranty. The CEL was still malfunctioning at time of

trial about one year later. The dealership continued to note objective evidence from computer diagnostics, as three different computer "codes" demonstrated problems with the CEL. Nevertheless, the evidence showed plaintiff continued to use the vehicle and logged 17,000 miles on the vehicle since purchase. The court of appeal reversed the judgment of the trial court ordering return of the purchase price and damages, and instead, ordered a reduction of the sales price of $2,000.00, including $999.05 for past and future repairs. The finding of a redhibitory defect was affirmed, as an award in "quanti minoris," or dimunition of the purchase price, must be based on a finding of a redhibitory defect. La.Civ.Code art. 2520.

In this case, unlike *Berney* and *Jones*, there was no manifestation of a defect within three days of purchase and there was no objective evidence of Mr. Bruce's complaint, the "engine surge." Mr. Bruce used his pick-up truck for over three years and put 67,000 miles on it, almost twice the average mileage of 12,000 miles per year. Marler Ford and Ford met its obligations under La.Civ.Code art. 2531 to "repair, remedy, or correct all defects" brought to its attention. It was Mr. Bruce's burden to establish that a complaint or symptom he experienced was legitimate and was caused by a redhibitory defect.

Since all other complaints and problems were timely and properly addressed by Marler Ford and Ford, the only possible evidence of a "hidden defect" in this case is Mr. Bruce's uncorroborated "sudden acceleration" or "engine surge" complaints. At best, Mr. Bruce's complaints, if believed, may be a "symptom" of a hidden defect. The law is clear that a complaint or a "symptom" is not *evidence* of a defect. *Fidele*, 786 So.2d 147. Mr. Bruce's testimony is not only uncorroborated, but contrary to the trial court's ruling, his statements are not supported by the record and are not credible.

In one of his "engine surge" complaints, Mr. Bruce claimed the truck suddenly accelerated on its own in wet weather. Mr. Bruce claimed he could not slow the vehicle and "stood on the brakes with both feet," but was unable to stop the vehicle until it ran in a ditch. Mr. Bruce called Marler Ford, who immediately dispatched someone to bring the truck to the dealership. After keeping the truck for testing and test driving with computer diagnostic testing equipment attached, the mechanics at Marler Ford were unable to find any evidence of an engine surge or sudden acceleration and could not duplicate Mr. Bruce's complaint. Their findings, or lack thereof, were evidenced by the documents from the dealership filed in the record. Later, when Ford's expert, Mr. Chris Furnas examined the truck, he tested the brake override system by pressing the accelerator to the floor, applying the brakes at the same time. The brake override system held and the vehicle remained stopped, in direct contradiction to Mr. Bruce's testimony that the brakes could not hold the "engine surge." Mr. Furnas could not duplicate an engine surge problem at all after extensive sophisticated computer diagnostic testing. His expert testimony is unrefuted.

Mr. Bruce further testified at trial that he and his wife were injured due to another sudden engine surge at his home during a "car washing incident." The trial judge remarked on the record that he found that Mr. Bruce's *complaints* of engine surge were credible and *uncontroverted*. The problem with that *finding* is that it ignores all of the evidence in the record except Mr. Bruce's uncorroborated testimony. Mr. Furnas' expert opinion and the dealership repair records were all based on objective, computer diagnostic testing. Plaintiff cannot simply argue that the trial court stated that plaintiff is credible and the evidence is uncontroverted, and then have this court affirm under the manifest error rule. The appellate court

must review the entire record and make an independent determination that the trial court's decision is supported by the evidence in the record. Mr. Bruce's testimony is not so supported.

On the key issue of credibility, Mr. Bruce filed a separate personal injury suit in Catahoula Parish against his son. Ford was not named as a party. Mr. Bruce claimed in that suit that the accident causing injury to he and his wife during the "car washing incident" was the negligence of his son, George Steven Bruce. A sworn affidavit signed by Mr. Bruce was attached to the petition, which stated:

> The accident was caused solely by the negligence of GEORGE STEVEN BRUCE, which is imputable to the liability insurance carrier providing liability insurance coverage on the 2007 Ford F-150 pickup truck registered to GEORGE L. BRUCE, and being operated at the time of this accident by GEORGE STEVEN BRUCE, incorporated herein as if copied in extensor in the following:
>
> > a) By attempting to operate the pickup truck without totally and completely entering the pickup truck and seating himself at an operator's position before moving the truck forward;
> > b) By causing the pickup truck to accelerate at an excessive rate of speed exerting force to the passenger and the persons involved in the washing procedure[;]
> > c) Failing to see plaintiff's action and taking proper precaution before moving the pickup truck;
> > d) In general, operating the pickup truck under his control in an unsafe, imprudent, reckless, and careless manner[.]

Defendant cites La.Civ.Code art. 1853, which provides that "A judicial confession is a declaration made by a party in a judicial proceeding. The confession constitutes full proof against the party who made it." *See C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003 (La. 13/3/03), 861 So.2d 156. Louisiana Civil Code Article 1853 is clear that "A judicial confession may be revoked only on the ground of error of fact." Mr. Bruce clearly made a judicial confession that the "engine surge" on the day of the car washing incident was caused by the

negligence of his son, not by some sudden "engine surge" problem caused by a redhibitory defect in the truck.[1]

The defense argues, and this writer agrees, that the trial judge's express finding that the "incident at plaintiff's residence" (the car washing incident) supports the judgment rescinding the sale is clearly wrong. The trial judge did not consider, discuss, or allocate any weight to Mr. Bruce's judicial confession. By failing to follow the dictates of La.Civ.Code art. 1853, the trial judge committed legal error. Moreover, his findings are manifestly erroneous. Clearly, a judicial confession was made as to that particular complaint of engine surge, fatally damaging Mr. Bruce's credibility on this key issue. *Cazaubon*, 79 So.3d 1063; *Smith*, 542 So.2d 831.

As to the trial judge's "finding" that plaintiff's complaints were uncontroverted, in reviewing the record, the testimony of Ford's expert, Mr. Furnas, is especially relevant as it is based on sound, objective scientific evidence. Bruce produced no testimony from an expert or anyone else of a vehicle defect. Therefore, Mr. Furnas' expert testimony is the only expert testimony in the record on this issue, and he found no defect.

In order to go the extra mile and fulfill its obligation under La.Civ.Code art. 2531 and its warranty, Marler Ford and Ford offered to install a testing unit for Mr. Bruce to use, a vehicle diagnostic recorder or VDR. That equipment could potentially have verified Mr. Bruce's uncorroborated complaints of engine surge. Mr. Bruce declined to use the equipment, thus depriving Ford and the dealership of

---

[1] After the trial in this case, Mr. Bruce amended his suit in Catahoula Parish to name Ford. The amendment did not correct the judicial confession, as Mr. Bruce did not acknowledge that there was an "error of fact" in his original pleading.

the opportunity to "repair, remedy, or correct" any defect that have been demonstrated. La.Civ.Code art. 2531.

## CONCLUSION

The trial judge's "finding" that Mr. Bruce made credible complaints about engine surge and that the evidence was uncontroverted is clearly wrong and his verdict finding a redhibitory defect and awarding damages must be reversed.