CONERY, J.,
dissents and assigns reasons.
|! Plaintiff, Mr. George Bruce, paid Mar-ler Ford $24,995.00 for a pre-owned pickup truck with approximately 9,000 miles on it. The majority affirms the trial court judgment finding a redhibitory defect and ordering return of the purchase price, and damages. Mr. Bruce used the vehicle for over three years and drove over 67,000 miles. The majority reduces the trial court judgment by $15,000 for the use of the vehicle. The majority affirmed a $17,000 award for Mr. Bruce’s attorney’s fees, awarded additional attorney’s fees for work on appeal, and assessed costs seventy-five percent to defendants and twenty-five percent to Mr. Bruce. I respectfully *434 dissent and would reverse the trial court, dismissing plaintiffs claim with prejudice and at his cost.
The majority has correctly summarized much of the law applicable in this case. Further elaboration on a few key points will help illuminate the main issues of concern. A plaintiff filing a redhibition suit must show that a hidden defect existed at the time of the sale of the defective “thing,” and that it existed before delivery. A good faith seller who had no knowledge of a defect is only obligated to “repair, remedy or correct” the defect. La. Civ. Code arts. 2520, 2530, and 2531. The buyer must show more than mere “symptoms.” Fidele v. Crescent Ford Truck 2Sales, Inc., 00-1934, p. 9 (La.App. 5 Cir. 4/11/01), 786 So.2d 147, 153. See Green v. Benson & Gold Chevrolet, 01-1161 (La. App. 5 Cir. 2/26/02), 811 So.2d 970, writ denied, 02-0891 (La.5/31/02), 817 So.2d 96; Smith v. General Motors Acceptance Corp., 542 So.2d 831 (La.App. 3 Cir.1991); Johns v. American Isuzu Motors, Inc., 622 So.2d 1208 (La.App. 2 Cir.1993).
There is no evidence in the record to show that Marler Ford knew of a defect in the vehicle it sold to Mr. Bruce, hence the seller was a “good faith” seller and was only bound to “repair, remedy, or correct” any defect actually discovered or brought to its attention after purchase. La.Civ. Code art. 2531. There is a presumption that the defect existed at the time of delivery only if the defect manifests itself within three days of delivery. La.Civ.Code art. 2520. No “alleged” defects manifested within three days of delivery in this case. As a good faith seller, Marler Ford must be given an opportunity to “repair, remedy, or correct” any alleged defect. La.Civ. Code art. 2531.
In Cazaubon v. Cycle Sport, LLC, 11-0289, p. 3 (La.App. 1 Cir. 11/9/11), 79 So.3d 1063, 1065-6, the court noted:
In order to establish a prima facie case of redhibition, a purchaser must show that a non-apparent defect existed at the time of the sale. La. C.C. art 2520 and 2530; Belle Pass Terminal, Inc., 634 So.2d at 494. “Defect” as contemplated in article 2520 means a physical imperfection or deformity or a lacking of the necessary components or level of quality. Id. Apparent defects which the purchaser might have discovered by simple inspection are not redhibitory defects. La. C.C. art. 2521.
Once the purchaser establishes a pri-ma facie case, the burden shifts to the seller to show that he can somehow escape liability. Belle Pass Terminal, Inc., 634 So.2d at 494. Whether or not a thing is defective is a factual determination to be made by the trier of fact, which determination will not be set aside on appeal absent manifest error. Id.
|sLike the trial court in Cazaubon, the trial court in this case concluded that Mr. Bruce met his burden of proving a redhibi-tory defect. Faced with the manifest error rule on appeal in Cazaubon, the appellate court conducted a review of the entire record to determine whether there was an adequate basis for the trial court’s ruling. After thoroughly reviewing the facts in the record, the appellate court concluded:
There was no evidence offered to prove that anything was ever actually wrong with the engine. Cycle Sport and D & L Power Sports both examined the engine and found nothing wrong. Mr. Ca-zaubon did not have a mechanic examine bike. The only evidence he presented was his own testimony that he looked at the bike with the service manager (who did not testify) and knew what was wrong. Finally, Mr. Cazaubon testified at trial that he did not know if there was anything wrong with the bike’s engine. Based upon this, we find that Mr. Ca- *435 zaubon failed to carry his burden of proof that the bike was defective, and the court was clearly wrong in concluding that the bike had a defective engine.
Id. at 1067.
Likewise, in this case, a careful review of the record leads this writer to the conclusion that no defect has been proven. The trial judge’s conclusory statement that there was no evidence to refute plaintiffs case, and that he found plaintiffs complaints credible not only finds no support in the record, but, to the contrary, is refuted by the evidence in the record.
According to the record, Mr. Bruce bought a certified pre-owned Ford F-150 pick-up truck from Marler Ford on January 14, 2008. He also purchased an extended warranty. The odometer reading was 8,904 miles. The vehicle was first returned to Marler Ford on January 28, 2008, with an inoperable trailer light. A blown fuse was replaced. The odometer read 9,605 miles. There was no manifestation of a defect in the “thing” within three days of sale. A burnt fuse in a | ¿trailer light fourteen days after sale is certainly not an indication of a redhibitory defect.
The next “repair” was done on February 25, 2008, mileage 14,038, some 5,134 miles and over 30 days later. Mr. Bruce complained that the air conditioner was malfunctioning, and that the vehicle was “missing,” “running rough,” and “dies on acceleration.” Some of the gauges were inoperable. The vehicle was repaired under warranty at no cost to Mr. Bruce. A loaner vehicle was provided, as was the case with all warranty repairs in this case.
On July 7, 2008, at 21,490 miles, Mr. Bruce complained that when coming to a stop, the “vehicle will hesitate and then surge when going to accelerate and when trying to pass.” Other minor problems including a power steering fluid cap and peeling emblems were repaired. After keeping the vehicle for eight days, mechanics at the dealership were unable to duplicate sudden acceleration or' engine surge complaints.
Other minor repairs were made under warranty and some routine maintenance was performed. The truck would not start on two occasions. The batteries, were replaced on both occasions. After the second replaced battery, it was discovered that Mr. Bruce had installed an after-market device that was draining the batteries. No further complaints of battery failure were noted after the device was removed.
The evidence showed that on May 27, 2009, over one year after purchase, and after driving the vehicle 26,659 miles, Mr. Bruce complained of engine surge when at a stop, that the engine was “missing,” “running rough” and “shuddering.” A diagnostic computer test run at the dealership demonstrated a “throttle body” 1 r,problem. The dealership installed a new throttle body under warranty, a relatively minor repair and certainly not a hidden defect in the “thing” at the time of sale.
Mr. Bruce again complained that the vehicle was “missing and running rough” one month later, on June 29, 2009. Another “throttle body” problem was found after 38,635 miles and again was replaced at no cost to Mr. Bruce. Again, a relatively minor problem that developed after extensive use was repaired pursuant to the warranty obligation.
On July 20, 2009, at 43,719 miles, Mr. Bruce again complained of engine surge and vehicle missing. The dealership kept the truck for ten days and drove it extensively with computer diagnostic equipment attached. According to the records, mechanics were unable to duplicate the problem.
Mr. Bruce has several similar complaints of engine surge, none of which *436 would show on computer diagnostic testing and could not be duplicated at the dealership. Ford sent an expert mechanic, Chris Furnas, who ran a series of objective diagnostic tests, reviewed all of the repair records and could find no evidence of a vehicle defect. He, likewise, could not duplicate the “engine surge” complaint.
The only “major repair” to the truck was a transmission problem. Ford replaced the transmission under warranty at no cost to Mr. Bruce over three years after the sale on March 21, 2011, at 75,359 miles. By then, Mr. Bruce had driven the vehicle almost 67,000 miles, hardly evidence of a hidden redhibitory defect present at the time of the sale. A minor repair to the transmission was made shortly after replacement, after which Mr. Bruce parked the vehicle and sued.
Plaintiff argues and the majority agrees that “While a minor defect or defects alone may not rise to the level of a redhibitory defect, multiple minor defects, even|fiwhen repaired, may support a claim for redhibition,” citing Jones v. Winnebago Indus., 47-137, p. 7 (La.App. 2 Cir. 5/16/12), 92 So.3d 1113, 1118 (citing Berney v. Rountree Olds-Cadillac Co. Inc., 33-388 (La. App. 2 Cir. 6/21/00), 763 So.2d 799).
Jones can be clearly distinguished from this case. In Jones, on plaintiffs’ first trip in his brand new $189,000 RV, the motor home failed and was taken back to the dealership within three days of purchase. During the first year, the vehicle was out of service in the shop 242 days. As of trial, almost three years after purchase, only 2,904 miles were logged for recreational use.
The dealership’s service manager was on plaintiffs side and testified that he thought all of plaintiffs’ concerns were legitimate. He corroborated the problems had been occurring “from day one.” He testified “that in all his experience in the RV service business, he had never seen another motor home with the number, type and breadth of problems that plaintiffs’ RV had.” Id. at 1117. The dealership was granted a directed verdict, as there was no evidence of defective repair. The manufacturer was held liable in redhibition.
The evidence here is almost exactly the opposite. No “defect” was proven at all. All of the dealership’s mechanics and Chris Furnas, the expert Ford mechanic who examined and tested the vehicle, could not duplicate Mr. Bruce’s “engine surge” complaints after extensive objective testing, and could find no evidence of any vehicle defect.
In Berney, the vehicle was a used 1995 Chevy Blazer with 49,148 miles on it at the time of purchase. The check engine light (CEL) was malfunctioning within three days of purchase. Numerous relatively minor problems were noted and corrected under extended warranty. The CEL was still malfunctioning at time of 17trial about one year later. The dealership continued to note objective evidence from computer diagnostics, as three different computer “codes” demonstrated problems with the CEL. Nevertheless, the evidence showed plaintiff continued to use the vehicle and logged 17,000 miles on the vehicle since purchase. The court of appeal reversed the judgment of the trial court ordering return of the purchase price and damages, and instead, ordered a reduction of the sales price of $2,000.00, including $999.05 for past and future repairs. The finding of a redhibitory defect was affirmed, as an award in “quanti minoris,” or diminution of the purchase price, must be based on a finding of a redhibitory defect. La.Civ. Code art. 2520.
In this case, unlike Berney and Jones, there was no manifestation of a defect within three days of purchase and there *437 was no objective evidence of Mr. Bruce’s complaint, the “engine surge.” Mr. Bruce used his pick-up truck for over three years and put 67,000 miles on it, almost twice the average mileage of 12,000 miles per year. Marler Ford and Ford met its obligations under La.Civ.Code art. 2531 to “repair, remedy, or correct all defects” brought to its attention. It was Mr. Bruce’s burden to establish that a complaint or symptom he experienced was legitimate and was caused by a redhibitory defect.
Since all other complaints and problems were timely and properly addressed by Marler Ford and Ford, the only possible evidence of a “hidden defect” in this case is Mr. Bruce’s uncorroborated “sudden acceleration” or “engine surge” complaints. At best, Mr. Bruce’s complaints, if believed, may be a “symptom”.of a hidden defect. The law is clear that a complaint or a “symptom” is not evidence of a defect. Fidele, 786 So.2d 147. Mr. Bruce’s testimony is not only uncorroborated, but contrary to the trial court’s ruling, his statements are not supported by the record and are not credible.
|sIn one of his “engine surge” complaints, Mr. Bruce claimed the truck suddenly accelerated on its own in wet weather. Mr. Bruce claimed he could not slow the vehicle and “stood on the brakes with both feet,” but was unable to stop the vehicle until it ran in a ditch. Mr. Bruce called Marler Ford, who immediately dispatched someone to bring the truck to the dealership. After keeping the truck for testing and test driving with computer diagnostic testing equipment attached, the mechanics at Marler Ford were unable to find any evidence of an engine surge or sudden acceleration and could not duplicate Mr. Bruce’s complaint. Their findings, or lack thereof, were evidenced by the documents from the dealership filed in the record. Later, when Ford’s expert, Mr. Chris Furnas examined the truck, he tested the brake override system by pressing the accelerator to the floor, applying the brakes at the same time. The brake override system held and the vehicle remained stopped, in direct contradiction to Mr. Bruce’s testimony that the brakes could not hold the “engine surge.” Mr. Furnas could not duplicate an engine surge problem at all after extensive sophisticated computer diagnostic testing. His expert testimony is unrefuted.
Mr. Bruce further testified at trial that he and his wife were injured due to another sudden engine surge at his home during a “car washing incident.” The trial judge remarked on the record that he found that Mr. Bruce’s complaints of engine surge were credible and uncontroverted. The problem with that finding is that it ignores all of the evidence in the record except Mr. Bruce’s uncorroborated testimony. Mr. Furnas’ expert opinion and the dealership repair records were all based on objective, computer diagnostic testing. Plaintiff cannot simply argue that the trial court stated that plaintiff is credible and the evidence is uncontroverted, and then have this court affirm under the manifest error rule. The appellate court |flmust review the entire record and make an independent determination that the trial court’s decision is supported by the evidence in the record. Mr. Bruce’s testimony is not so supported.
On the key issue of credibility, Mr. Bruce filed a separate personal injury suit in Catahoula Parish against his son. Ford was not named as a party. Mr. Bruce claimed in that suit that the accident causing injury to he and his wife during the “car washing incident” was the negligence of his son, George Steven Bruce. A sworn affidavit signed by Mr. Bruce was attached to the petition, which stated:
The accident was caused solely by the negligence of GEORGE STEVEN *438 BRUCE, which is imputable to the liability insurance carrier providing liability insurance coverage on the 2007 Ford F-150 pickup truck registered to GEORGE L. BRUCE, and being operated at the time of this accident by GEORGE STEVEN BRUCE, incorporated herein as if copied in extensor in the following:
a) By attempting to operate the pickup truck without totally and completely entering the pickup truck and seating himself at an operator’s position before moving the truck forward;
b) By causing the pickup truck to accelerate at an excessive rate of speed exerting force to the passenger and the persons involved in the washing procedure[;]
c) Failing to see plaintiffs action and taking proper precaution before moving the pickup truck;
d) In general, operating the pickup truck under his control in an unsafe, imprudent, reckless, and careless manner[.]
Defendant cites La.Civ.Code art. 1853, which provides that “A judicial confession is a declaration made by a party in a judicial proceeding. The confession constitutes full proof against the party who made it.” See C.T. Traina, Inc. v. Sunshine Plaza, Inc., 03-1003 (La.12/3/03), 861 So.2d 156. Louisiana Civil Code Article 1853 is clear that “A judicial confession may be revoked only on the ground of error of fact.” Mr. Bruce clearly made a judicial confession that the “engine surge” on the day of the car washing incident was caused by the | innegligence of his son, not by some sudden “engine surge” problem caused by a redhibitory defect in the truck.[1]
The defense argues, and this writer agrees, that the trial judge’s express finding that the “incident at plaintiffs residence” (the car washing incident) supports the judgment rescinding the sale is clearly wrong. The trial judge did not consider, discuss, or allocate any weight to Mr. Bruce’s judicial confession. By failing to follow the dictates of La.Civ.Code art. 1853, the trial judge committed legal error. Moreover, his findings are manifestly erroneous. Clearly, a judicial confession was made as to that particular complaint of engine surge, fatally damaging Mr. Bruce’s credibility on this key issue. Cazaubon, 79 So.3d 1063; Smith, 542 So.2d 831.
As to the trial judge’s “finding” that plaintiffs complaints were uncontroverted, in reviewing the record, the testimony of Ford’s expert, Mr. Furnas, is especially relevant as it is based on sound, objective scientific evidence. Bruce produced no testimony from an expert or anyone else of a vehicle defect. Therefore, Mr. Furnas’ expert testimony is the only expert testimony in the record on this issue, and he found no defect.
In order to go the extra mile and fulfill its obligation under La.Civ.Code art. 2531 and its warranty, Marler Ford and Ford offered to install a testing unit for Mr. Bruce to use, a vehicle diagnostic recorder or VDR. That equipment could potentially have verified Mr. Bruce’s uncorroborated complaints of engine surge. Mr. Bruce declined to use the equipment, thus depriving Ford and the dealership of |nthe opportunity to “repair, remedy, or correct” any defect that have been demonstrated. La.Civ.Code art. 2531.
*439 CONCLUSION
The trial judge’s “finding” that Mr. Bruce made credible complaints about engine surge and that the evidence was un-controverted is clearly wrong and his verdict finding a redhibitory defect and awarding damages must be reversed.

. After the trial in this case, Mr. Bruce amended his suit in Catahoula Parish to name Ford. The amendment did not correct the judicial confession, as Mr. Bruce did not acknowledge that there was an "error of fact” in his original pleading.