BROWN, Chief Judge.
11 In this redhibition action, both the plaintiffs and the manufacturer have appealed from the trial court’s judgment which was entered in accordance with a jury verdict in favor of plaintiffs. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Plaintiffs, Loren and Stephanie Jones, with their two daughters, have been RV enthusiasts for years. Together the family enjoyed RV road trips to places such as the Ozark Mountains, Galveston and Houston, Texas, and Monroe, Louisiana, just to name a few. In 2005 the Jones purchased them first RV “starter bus,” a Safari Sim-ba.
In 2008, plaintiffs decided to upgrade to a diesel-powered RV with air brakes and larger slide-out rooms for added cabin space. On February 28, 2008, plaintiffs purchased a new 2008 Winnebago Destination RV from Stevens RV Center in Lafayette, Louisiana. The purchase price for the 2008 Destination was $189,667.60 after a $10,000 rebate. Plaintiffs financed their purchase for 20 years.
When plaintiffs bought the RV they obviously expected to have quality use of the RV for a significant period of time; however, they did not take a single trip in the RV where multiple component parts did not fail. In their first year of owning the 2008 Destination, the motor home was out of service due to repairs for a total of 242 days. As of trial, almost three years after the Joneses bought their motor home from Stevens RV, there were only 10,500 miles on the RV: 1,356 of those miles were accrued on the trip |9from the Winnebago factory in Iowa to the dealership in Lafayette; 6,250 of the miles were from trips back and forth between plaintiffs’ home in Oak Grove and Stevens RV in Lafayette; and only 2,904 miles were logged due to recreational use by plaintiffs.
On March 3, 2008, within three days of its purchase, the RV was returned to Stevens RV after plaintiffs attempted to take the motor home to Memphis but were unable to reach their destination due to several problems. First, the locking latch *1116 mechanism on the fuel door fell off, causing the fuel door to flap against the motor home. Also, water poured into the RV as plaintiffs encountered snow on the interstate. Both repairs were made and covered by the Winnebago warranty.
Between March 3 and April 28, 2008, a number of other defects were identified and repairs were made by Stevens RV. In particular, were the first of a continuing series of problems with the slide-outs on the RV. Repairs to the slide-out were covered by Winnebago’s warranty. Numerous other problems were also addressed during this month and a half following plaintiffs’ purchase of the RV.[1]
RThomas Jardell, Stevens RV Center’s service manager, testified that he had 30 years experience in the RV service business, and he thought that plaintiffs had experienced an excessive number of problems with their motor home within the first few months after its purchase. On April 21, 2008, Jardell wrote plaintiffs a letter and included the work order history on plaintiffs’ RV through that date. In this letter, Jardell reassured plaintiffs that Stevens RV Center would continue to do its best to address any and all problems that arose on their RV under the Winnebago warranty. The next day, April 22, 2008, Jardell wrote a letter to Winnebago’s Service District Manager, Mike Muffoletto, notifying him of the service-related problems plaintiffs had been experiencing with their Winnebago “from day one.”
Jardell stated that on May 21, 2008, Mrs. Jones called him to let him know that there had been too many problems with their RV, which was a “lemon,” and they either wanted their money back or a replacement RV. Jardell felt that her concerns were legitimate in light of the situation. Mrs. Jones also told Jardell that her brother passed away, and she asked for a hotel allowance since they did not have the use of their motor home due to ongoing repair issues. Jardell contacted Winnebago to ask for a $200 hotel allowance for plaintiffs. Winnebago refused to even split the hotel allowance with Stevens RV Center. On May 28, 2008, Jardell notified Winnebago that Loren Jones felt that their motor home was a lemon and they no longer wanted the RV. At that point, Jardell felt that plaintiffs’ ^concerns were reasonable and their desire to return the RV was not “buyer’s remorse” but was directly related to all of the problems they had experienced since buying the motor home.
*1117 On August 5, 2008, more defects were acknowledged by Winnebago under warranty. The most significant was that the motor for the RV’s windshield wipers failed while the family traveled in the motor home during a heavy rainstorm. The wipers stopped working while the RV was traveling at a speed of 70 mph on I — 10 near the 1-49 exit to Lafayette. Jones had to use his GPS device to exit the interstate.
While packing for a Thanksgiving trip in 2008, Jones discovered that the large slide-out was not working properly. As it retracted, it made crunching and popping sounds. The bed frame broke and slid across the floor. The slide-out then locked into place and could not be moved until Jardell provided Jones with instructions on how to override the computer system. Upon its return to Stevens RV Center on December 1, 2008, the RV was discovered to have another slide-out alignment problem. The RV was taken to Stevens RV Center again on March 23, 2009, for a number of warranty repairs, including another broken gear on the right slide-out and failure of the right slide-out to retract flush against the RV.
A trip in May 2009 to the air show at Barksdale AFB was made by Jones and a friend. Upon their return, Jones left the slide-outs extended after unloading the RV. It rained overnight and water poured into the RV at the site of the slide-outs. At that point, plaintiffs stopped using their RV.
| ¡Almost one year later, in March 2010, Jones and two friends took the RV to the Texas Motor Speedway. As Jones drove in traffic on the interstate, one friend rode on the couch in one of the slide-out areas. That friend began screaming that the slide-out was coming out and extending while they were driving on the interstate. Jones returned the RV to Stevens RV Center for repairs on March 8, 2010.
At that time, technicians discovered that the brake lever on the slide-out had disengaged from the front right forward slide room motor. According to Jardell, this should never occur as it is a major safety issue which can pose a risk for a fatal accident. Also it was discovered that the circuit board on the LP gas monitor failed, and a light socket fell out of the dash panel. A bad leak on the passenger side slide-out when retracted was diagnosed as well. Although Jones was quoted a price for further testing of the leak by Stevens RV Center, he requested that all further testing and repairs be put on hold as the RV was no longer under warranty.
Jardell testified that in all of his experience in the RV service business, he had never seen another motor home with the number, type and breadth of problems that plaintiffs’ RV had. According to Jar-dell, the majority of repairs made until the expiration of the Winnebago warranty were issues that clearly met Winnebago’s definition of a warranty defect.
Plaintiffs filed suit against Stevens RV Center and Winnebago Industries, Inc. A jury trial was held from February 22-25, 2011. At the close of plaintiffs’ case, Stevens RV Center moved for and was granted a | ¡¡directed verdict on plaintiffs’ negligent repair claim against them.[2] The jury rendered a verdict in favor of plaintiffs, awarding them the return of the purchase price of the Winnebago ($189,667.50), together with interest ($35,320) and insurance ($4,800) payments made. The amount of attorney fees to be awarded to *1118 plaintiffs was addressed by the parties post-trial. The trial court found that plaintiffs were entitled to an attorney’s fee of 35% of the gross amount awarded by the jury, $80,425. A judgment rescinding the sale of the 2008 Winnebago Destination and awarding the above amounts, together with legal interest and costs, was signed on April 15, 2011, and filed on April 21, 2011. The trial court rejected plaintiffs’ request for nonpecuniary damages. Both Winnebago and plaintiffs have appealed.

DISCUSSION

Existence of Redhibitory Defects

La. C.C. art. 2520 states, in part:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
La. C.C. art. 2545 provides:
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for |7the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.
A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.
While a minor defect or defects alone may not rise to the level of a redhibi-tory defect, multiple minor defects, even when repaired, may support a claim for redhibition. Berney v. Rountree Olds-Cadillac Co., 33,388 (La.App.2d Cir.06/21/00), 763 So.2d 799. The purchaser need not show the particular cause of the defects, but may simply prove the existence of defects which make the item unfit for its intended purchase. Young v. Ford Motor Co., Inc., 91-0561 (La.03/02/92), 595 So.2d 1123. The existence of redhibitory defects is a question of fact which will not be disturbed in the absence of manifest error. Berney, supra; Ford Motor Credit v. Laing, 30,160 (La.App.2d Cir.01/21/98), 705 So.2d 1283.
In situations where new vehicles present such defects as would render their use inconvenient and imperfect to the extent that the buyer would not have purchased the automobile had he or she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price. Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La.App. 1st Cir.), writ refused, 391 So.2d 454 (La.1980). Moreover, a manufacturer is presumed to have knowledge of defects in the object it produces. La. C.C. art. 2545.
18The present case is unlike Berney, wherein this court amended the judgment to limit relief to a reduction of the sales price.[3] In the present case, there is no *1119 manifest error in the jury’s determination that the recreational vehicle manufactured by defendant Winnebago had major as well as numerous minor redhibitory defects. The jury was presented with very significant evidence of defects that existed at the time the RV was purchased by plaintiffs. In fact, the evidence and the testimony established that the only possible source/ cause of the defects was the RV’s manufacturer, Winnebago. The first post-sale work order was prepared on March 3, 2008, within three days of plaintiffs’ purchase of the motor home. The first slide-out problems were reported by plaintiffs within one month of the RV’s purchase, on April 3, 2008. Expert testimony established that the slide-out was improperly installed by Winnebago, which led to the repeated problems plaintiffs had with the slide-out, including the significant leaks, the bed frame being ripped from the floor, a number of broken gear teeth, and torn wipe seals. In fact, the slide-out deployed while the RV was being driven on an Interstate highway. The jury had more than enough evidence from which it could have found that the RV purchased by plaintiffs contained redhibitory defects which entitled them to judgment rescinding the sale. As noted by the trial court, “It is obvious from the[ir] verdict that the jury reasonably concluded that no one would have bought this motor |flhome, given its numerous defects, for any price.” The record fully supports this determination.

Denial of Motions for JNOV/New Trial

Winnebago’s second assignment of error is that their motion for new trial/JNOV should have been granted.
The record reflects that the trial court applied the correct standard in considering defendant’s motion for JNOV and did not find that the evidence pointed so strongly in favor of Winnebago that reasonable jurors could not reach a different conclusion. Forbes v. Cockerham, 08-0762 (La.01/21/09), 5 So.3d 839. The trial court did not err in denying defendant’s motion for JNOV. Likewise, we find that the trial court did not abuse its discretion in denying defendant’s motion for new trial based upon its determination that the jury verdict was supportable by a fair interpretation of the evidence. Campbell v. Tork Inc., 03-1341 (La.02/20/04), 870 So.2d 968.

Jury’s Damage Award and Trial Court’s Attorney Fee Award

In its final assignment of error, Winnebago contends that the jury erred in awarding plaintiffs the return of 100% of their purchase price together with all interest payments without credit for use of the RV. Defendant also urges that the attorney’s fee awarded was excessive and should be reduced.
A manufacturer is conclusively presumed to have knowledge of defects in the object it produces. Since the manufacturer’s knowledge is conclusively presumed, the manufacturer is deemed to be in bad faith in selling a defective product and is liable to the buyer for all damages caused |10by the product and attorney fees. La. C.C. art. 2545; Aucoin v. Southern Quality Homes, LLC, 07-1014 (La.02/26/08), 984 So.2d 685; Morris v. United Services Auto. Ass’n, 32,528 (La.App.2d Cir.02/18/00), 756 So.2d 549; Frentress v. Howard, 31,609 (La.App.2d Cir.02/24/99), 728 So.2d 1019. These damages include the return of the purchase price of the RV with interest from the time it was paid and for reimbursement of reasonable expenses incurred for the preservation of the motor home, such as insurance premiums. Aucoin, supra.
A trial court has great discretion in awarding attorney fees in a redhibition case. Health Education and Welfare Federal Credit Union v. Peoples State Bank, 11-672 (La.App.3d Cir.12/07/11), 83 *1120 So.3d 1055; Dailey v. The Home Furnishings Store, 02-1225 (La.App.4th Cir.09/17/03), 857 So.2d 1051. Before an attorney’s fee award will be disturbed the record must reveal that the trial court abused its much discretion in making the award. Smith v. Acadiana Mortg. of Louisiana, Inc., 42,795 (La.App.2d Cir.01/30/08), 975 So.2d 143; Health Education and Welfare Federal Credit Union, supra; Buteau v. Leleux, 591 So.2d 1261 (La.App. 3d Cir.1991).
The law clearly provides for exactly the remedy awarded by the jury in this case: return of the purchase price, together with reimbursement for interest payments made and insurance premiums paid. See, Aucoin, supra. Furthermore, the attorney’s fee awarded by the trial court is reasonable and does not constitute an abuse of the lower court’s discretion; it is supported [nby detailed affidavits setting forth the type of work performed and increments of time spent by plaintiffs’ counsel on this case.

Denial of Nonpecuniary Damages

What type or types of damages does Article 2545 contemplate? Does it include mental anguish damages unassociated with personal injury? In their appeal, plaintiffs urge that the trial court erred in refusing to instruct the jury that they were entitled to nonpecuniary damages, and that the lack of such an award was erroneous.
La. C.C. art. 1998 provides:
Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a non-pecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
The Revision Comments state that article 1998 is new, and it changes the law in part. As interpreted in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), former La. C.C. art. 1934(3) (1870) allowed recovery of damages for nonpecuniary losses only for breach of a contract which has “intellectual enjoyment” as its principal or exclusive purpose. Under La. C.C. art. 1998 such damages are recoverable when a contract has been made for the gratification of a nonpecuniary interest and, because of circumstances surrounding its formation or breach, the obligor knew or 112should have known that his failure to perform would cause nonpecuniary loss.
In Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1132-33 (La.1992) the Supreme Court explained:
During the Revision process, the Council, and subsequently the Legislature, could easily have restricted the recovery of nonpecuniary damages to those contracts formed solely to gratify nonpecu-niary interests. Indeed, the prior, conditionally-accepted draft of that article would have accomplished that objective. They did not choose to do so. Similarly, they could have chosen to expand recovery of these damages to all contract cases (even those whose exclusive object is to gratify pecuniary interests), as advocated by Professor Litvinoff. They did not. Instead, the choice they made was to preserve the substance of source article 1934(3) as interpreted by Mea-dor, thereby permitting recovery of non-pecuniary damages in situations where nonpecuniary interests constitute at least one of the significant interests that the obligee intended to gratify. The latter might be classified as a hybrid, or mixed, situation where obligees who en *1121 ter the contract to gratify both pecuniary and nonpeeuniary interests are permitted the recovery of nonpeeuniary damages.
A “nonpeeuniary loss” means that which is known in continental doctrine as “dom-mage moral,” that is, damage of a moral nature which does not affect a “material” or tangible part of a person’s patrimony. See Saul Litvinoff, Moral Damages, 38 La.L.Rev. 1 (1977). A contract made for the gratification of a nonpeeuniary interest means one intended to satisfy an interest of a spiritual order, such as a contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters of sentimental value. In such a case, upon the obligor’s failure to perform, the obligee may recover the damages he has sustained of a nonpeeuniary— or “moral” — nature. See Litvinoff, supra. Thus, if a horse is bought for the purpose of showing it at an exhibition, the purchaser is entitled to recover l1sfor his disappointment and inconvenience if the contract is rescinded because of a redhibitory vice. See Smith v. Andrepont, 378 So.2d 479 (La.App. 1st Cir.1979), writ denied, 380 So.2d 102 (La.1980).
Thus, under La. C.C. art. 1998, which is the controlling article for the type of damages referred to by the redhibition articles (specifically La. C.C. art. 2545), if it can be established that the obligee intended-and if the nature of the contract supports this contention-to gratify a significant nonpeeuniary interest by way of the contract, and that the obligor either knew or should have known that failure to perform would cause nonpeeuniary loss to the obligee, then the requirements for recovery of nonpeeuniary damages are satisfied. Young, supra; Davis v. Sweeney, 44,997 (La.App.2d Cir.03/03/10), 31 So.3d 1184; Stonecipher v. Mitchell, 26,575 (La.App.2d Cir.05/10/95), 655 So.2d 1381. Whether the gratification of some nonpeeuniary interest is a principal object of a contract is a question of fact. Id.
To highlight the difference, the supreme court wrote in Young, 595 So.2d at 1133:
Although the purchase of a new truck or car may be prompted by both the pecuniary interest of securing transportation and the nonpeeuniary interest relating to enjoyment, taste, and personal preference of owning and driving the chosen vehicle, the nature of the contract is primarily pecuniary (unless other factors evidence a different conclusion). Contrast the contract of purchase made in a standard new car sale with a contract for purchase of an antique car that, while it might be driven on the streets, represents the obligee’s desire to own, and perhaps to show, a distinctive, unique automobile. Or contrast the traditional new car purchase contract with a contract for purchase of a specifically-designed, custom-built vehicle. [Footnote omitted.]
In Young, supra, the supreme court found:
luln this case, the nature of the contract does not make it evident, nor do the facts and circumstances surrounding the formation of the contract demonstrate that Young purchased the new pickup truck from Bordelon Motors, Inc. for a significant nonpeeuniary purpose. Although he testified that he wanted a larger cab area so that he could lie down on trips if his back started to bother him, that desire seemed more incidental in nature than that which would constitute a significant nonpeeuniary interest in purchasing the truck. The rest of his testimony concerned the need to use the truck in his service station business to haul tires or to transport customers while their cars were being fixed. Even his plans for recreational use of the vehicle (i.e., fishing trips) constituted the *1122 pecuniary interest of requiring suitable transportation to haul his fishing boat.
In the case sub judice, we cannot say that the trial court was manifestly erroneous in its determination that this was not a proper case for an award of nonpecuniary damages and thus in its decision not to instruct the jury on such damages. The court made this finding after hearing all of the evidence presented at trial.
In the instant case, the Winnebago plaintiffs purchased from the dealer was neither custom-built nor specifically designed. While plaintiffs did have a valid nonpecuniary interest, to spend quality time with their children (and family and friends) traveling, camping and enjoying outdoor activities, it can be argued that most if not all purchasers of RVs have the same or similar interests. This does not change the fact that the primary purpose of the purchase of a recreational vehicle is transportation/recreational travel. Although a close call, we cannot find clear error in the trial court’s determination that plaintiffs failed to establish their entitlement to nonpecuniary damages under La. C.C. art. 1998. See, Young, supra; Landry v. Forest River, Inc., 06-1424 (La.App.3d Cir.03/14/07), 953 So.2d 1046.

Conclusion

For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs of this appeal are to be paid by Winnebago Industries, Inc.

. These problems included: an ammonia smell coming from the RV's refrigerator, which was later recalled because it presented a fire hazard; a defective dash air conditioner thermostat which failed within the first three days of purchase (it took over a month to get the air conditioner running because of a delay in getting a part and/or the unit back); the steering wheel's violent pulling to the right (multiple attempts at alignment were required to correct the problem); howling brakes whenever Loren Jones attempted to stop the RV; paint defects (which took several attempts to correct); condensation on a rear passenger window; a defective entry door that shook while driving and was difficult to close; water dripping on the electric generator while the air conditioner was running; a water leak in the motor home’s fresh water tank; an empty generator reservoir caused by a crack in the reservoir; and an off-balance passenger window (which was caused by a bent felt channel which had to be replaced). There were further problems with the left slide-room walking from side to side as it extended, and the slide room also had a torn bottom seal gasket (which is usually torn when something in the slide room is malfunctioning or out of adjustment). Also noted was a passenger side slide gear with a broken tooth. There was a problem with the house batteries not holding a charge; it was discovered that the battery brackets were corroded and had to be replaced within six weeks of plaintiffs' purchase. The toilet was leaking and a nut was replaced. The leak continued, however, until the entire toilet assembly was eventually replaced.

. Winnebago and Stevens RV Center agreed that Winnebago would not argue to the jury that plaintiffs’ RV problems were caused by negligent repairs by Stevens RV Center and that Stevens RV Center would not pursue its cross-claim against Winnebago for indemnification, attorney fees and expenses.

. Berney had purchased a used S-10 Blazer. This court found that the documentation filed by the parties established that from the time of the April 1998 purchase until the month before the dispute was tried in May 1999, the Bemeys and, to some extent Rountree, drove the vehicle over 17,000 miles. Although plagued by the CEL (check engine light) and other problems, the Berneys were able to use the vehicle extensively.