GENOVESE, Judge.
| iln this redhibition suit, Defendants, Ford Motor Company, Inc. (Ford Motor Company) and Marler Ford Company, Inc. (Marler Ford), appeal the judgment of the trial court in favor of Plaintiff, George L. Bruce, awarding him the purchase price of the vehicle, expenses, and attorney fees. Mr. Bruce has answered the appeal seeking an increase in the attorney fee award for work performed on post-trial motions and on appeal. For the following reasons, we affirm in part, reverse in part, and render.
FACTUAL AND PROCEDURAL BACKGROUND
On January 14, 2008, Mr. Bruce purchased a 2007 Ford F-150 with 8,904 miles *429 from Marler Ford and paid $30,118.63 for the truck and related expenses.[1] The truck was a certified pre-owned vehicle and, therefore, was covered by a warranty. Mr. Bruce subsequently brought the truck in on several occasions for maintenance and repairs.
Due to continuing unresolved problems with the truck, Mr. Bruce instituted this redhibition action, naming Ford Motor Company and Marler Ford (sometimes collectively referred to as Ford herein) as defendants. Mr. Bruce’s petition set forth multiple occasions when he brought the truck in for repairs and prayed for a rescission of the sale with a return of its purchase price, incurred expenses, interest, and attorney fees.
Following a trial on the merits, the trial court rendered judgment in favor of Mr. Bruce for $35,917.72,[2] plus legal interest and court cost. The trial court also awarded Mr. Bruce $17,000.00 in attorney fees. Thereafter, Ford filed a motion |2for new trial, and Mr. Bruce filed a motion to increase the attorney fee award. Following a hearing, the trial court denied both motions. Ford has appealed the trial court’s judgment in favor of Mr. Bruce, and Mr. Bruce has answered the appeal relative to an increase in attorney fees.
ASSIGNMENTS OF ERROR
On appeal, Ford presents the following assignments of error for our review:
I.
The trial court erred in rendering judgment in favor of [Mr. Bruce] because there was no evidence or the evidence was insufficient to support its finding that a “defect” existed in the Ford F-150 “Super Cruiser” at the time it was delivered to [Mr. Bruce].
II.
In the alternative, the trial court erred by awarding [Mr. Bruce] the full sales price of the F-150 instead of a reduction in its price, given that [Mr. Bruce] drove the truck over 67,000 miles throughout a three-year period.
III.
The trial court erred in awarding to [Mr. Bruce] an excessive amount of attorney[ ] fees for a case of this nature.
LAW AND DISCUSSION
The standard of review to be applied in this case was recently set forth in Thibodeaux v. Kaufman Trailers, Inc., 12-885, pp. 2-3 (La.App. 3 Cir. 2/6/13), 108 So.3d 1283, 1285-86, wherein we stated:
The existence of redhibitory defects is a question of fact, and the trial court’s conclusions about them should not be set aside absent manifest error. Parker v. Dubus Engine Co., 563 So.2d 355 (La.App. 3 Cir.1990). An appellate court may not set aside a trial court’s finding of fact absent manifest error or unless the fact finder is clearly wrong. Lewis v. State, Through Dep’t of Transp. and Dev., 94-2370 (La.4/21/95), 654 So.2d 311; Thomas v. Albertsons, Inc., 28,950 (La.App. 2 Cir. 12/11/96), 685 So.2d 1134, writ denied, 97-0391 (La.3/27/97), 692 So.2d 395.

*430
\ Sufficiency of Evidence

An action in redhibition arises pursuant to Louisiana Civil Code Article 2520, which provides:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
In the instant matter, the trial court found that “[a]lmost immediately!,] a litany of minor problems and others not so minor manifested themselves. The most significant event in the [c]ourt’s mind occurred when the vehicle accelerated on its own in traffic and once again at [Mr. Bruce’s] residence.” The trial court expressly noted “that the throttle body and vehicle’s transmission were also replaced at one point[,]” and “a long series of complaints and attempted repairs including numerous minor repairs, or at least less serious ones, were made.” Accepting Mr. Bruce’s testimony that he would not have purchased this vehicle had he known it had been titled prior to his purchase, or had he known of the defects, and considering the evidence that “[n]umerous complaints and attempts at repairs were made by both Marler and a dealership in Natchez, Mississippi!,]” the trial court found that Mr. Bruce was entitled to a rescission of the sale. We find no manifest error in this finding, and we affirm same.
In its first assignment of error, Ford asserts that Mr. Bruce failed to prove the existence of a defect. We disagree.
|4“A buyer of an automobile who asserts a redhibition claim need not show the particular cause of the defects making the vehicle unfit for the intended purposes, but rather must simply prove the actual existence of such defects.” Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1126 (La.1992); Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871 (1924). The buyer in a redhibition action is also not required to negate all other causes of a defect. Ewing and Salter, Inc. v. Gafner Automotive & Mach., Inc., 392 So.2d 762 (La.App. 3 Cir.1980), writ denied, 396 So.2d 933 (La.1981). “The buyer may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale.” Rey [v. Cuccia ], 298 So.2d [840,] 843 [ (La.1974) ].
Bonnette v. Ford Motor Co., 11-1274, pp. 4-5 (La.App. 3 Cir. 3/7/12), 88 So.3d 1164, 1168.
Ford argues that Mr. Bruce’s “case is entirely based upon his experience of symptoms — engine surge and unintended acceleration — that, despite Ford’s extensive efforts[,] were never duplicated, and the cause of which was never identified, not even by [Mr. Bruce] himself.” However, Mr. Bruce does not bear the burden of showing the cause of the problems that he experienced with the vehicle. In fact, the record bears out that Ford itself never identified the source of this repeated complaint because the vehicle was not “throw *431 ing codes” to indicate the source of the problems.[3]
In addition to Mr. Bruce’s primary complaint of the engine surging, there is ample evidence in the record establishing what the trial court described as a “litany” of problems. These additional problems included a “stumbling” or hesitation of the engine, various lights/indicators flashing, gauges failing completely, a dead battery on two occasions, the transmission needing | ¡-.replacement, a throttle body twice needing replacement, repair and replacement of electrical wiring, and repair of a leaking intake gasket.
Ford contends that some of the “repairs” considered by the trial court were actually only routine maintenance and minor repairs that were done at no charge to Mr. Bruce. While this is true to some extent, many other “repairs” were much more significant problems, such as replacement of the throttle body (twice) and replacement of the transmission. All of these problems required the vehicle to be brought in for repair and were in addition to the multiple failed attempts to have the recurring problem of the engine surge fixed. The jurisprudence is clear that “[wjhile a minor defect or defects alone may not rise to the level of a redhibitory defect, multiple minor defects, even when repaired, may support a claim for redhibition.” Jones v. Winnebago Indus., Inc., 47,137, p. 7 (La.App. 2 Cir. 5/16/12), 92 So.3d 1113, 1118 (citing Berney v. Rountree Olds-Cadillac Co., Inc., 33,388 (La. App. 2 Cir. 6/21/00), 763 So.2d 799). Thus, this assignment of error has no merit.
Ford also argues that a separate personal injury lawsuit for damages brought by Mr. Bruce against his son, alleging that his son was at fault in the operation of this same truck in a car-washing incident, constituted a “judicial admission.” In that separate lawsuit, Mr. Bruce alleged that his son operated the truck in an “unsafe, imprudent, reckless[,] and careless manner.” There were no allegations against Ford in the separate lawsuit. There was no judicial confession related to the instant redhibition lawsuit. Even assuming there was some sort of judicial confession in the separate lawsuit, there were numerous instances of multiple defects relating to the truck. This is a manifest error case. We cannot say that the trial judge was clearly wrong or committed manifest error.
| sRescission of Sale lReduction in Price and Credit for Use of Vehicle
In its second assignment of error, Ford asserts error in the trial court’s award of the full sales price of the vehicle. It asserts that even if Mr. Bruce met his burden of proof in his redhibition claim, he would only be entitled to a reduction in the sales price of the vehicle. Alternatively, Ford argues that it is entitled to a credit to account for Mr. Bruce’s use of the vehicle for a three-year period and putting approximately 67,000 miles on said vehicle. We agree, in part, with this contention.
In Thibodeaux, 108 So.3d at 1287, this court discussed a purchaser’s remedy in redhibition, stating as follows:
*432 If a purchaser buys a new vehicle with defects, and those defects render the use of that vehicle inconvenient or imperfect to the extent that the buyer would not have purchased the vehicle if he had known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the purchase price.
In this case, Mr. Bruce testified that he would not have purchased the vehicle if Ford had told him that it had been previously titled and leased, or had he known of the defects. Therefore, we find that the record fully supports the trial court’s ruling that Mr. Bruce was entitled to obtain a rescission of the sale as opposed to a reduction in the sales price. Id.; La.Civ. Code art. 2520.
We do agree, however, that Ford is entitled to a credit for Mr. Bruce’s use of the vehicle. Ford argues on appeal that “[a]t minimum, [it] is entitled to a credit for [Mr. Bruce’s] excessive use of the truck over a three year time period[.]” Mr. Bruce’s “response is that Ford did not only not provide any basis for the value of the use, any use would be overridden by the constant manifestations of multiple defects causing multiple repairs at two different Ford dealerships and the inconveniences associate[d] therewith.”
|7Louisiana Civil Code Article 2531 provides that a seller is entitled to a credit “if the use made of the thing, or the fruits it has yielded, were of some value to the buyer.” Based upon our review of the record, we find that Ford met its burden of proof pursuant to La.Civ.Code art. 2531. Unequivocally, the use of the vehicle for three years and putting approximately 67,-000 miles on the vehicle establishes that it was of some value and use to Mr. Bruce. While cognizant of the burdensome and considerable inconvenience experienced by Mr. Bruce, and given his extensive use of the vehicle, and in balancing same, we find that Ford is entitled to a credit for such use in the amount of $15,000.00. Accordingly, the judgment of the trial court in favor of Mr. Bruce in the amount of $35,917.72 is reversed and vacated, and we render judgment herein in the amount of $20,917.72.

Attorney Fees

In its final' assignment of error, Ford argues that the trial court erred in awarding Mr. Bruce excessive attorney fees. In Mr. Bruce’s answer to appeal, he asserts error by the trial court in failing to award him attorney fees to account for post-trial and appellate work performed by his counsel.
A trial court has great discretion in awarding attorney fees in a redhibition case. Health Education and Welfare Federal Credit Union v. Peoples State Bank, 11-672 (La.App.3d Cir.12/07/11), 83 So.3d 1055; Dailey v. The Home Furnishings Store, 02-1225 (La.App.4th Cir.09/17/03), 857 So.2d 1051. Before an attorney’s fee award will be disturbed[,] the record must reveal that the trial court abused its much discretion in making the award. Smith v. Acadiana Mortg. of Louisiana, Inc., 42,795 (La.App.2d Cir.01/30/08), 975 So.2d 143; Health Education and Welfare Federal Credit Union, supra; Buteau v. Leleux, 591 So.2d 1261 (La.App. 3d Cir.1991).
Jones, 92 So.3d at 1119-20.
Louisiana Rules of Professional Conduct, Rule 1.5, addresses attorney fees and provides:
(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The ^factors to be considered in determining the reasonableness of a fee include the following:
*433 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
In this case, Mr. Bruce and his counsel entered into a contract whereby they both agreed to a charge of $300.00 per hour for the amount of attorney fees, regardless of the outcome of the matter. Mr. Bruce’s counsel submitted a detailed affidavit outlining the time he spent working on the ease. Though $300.00 per hour is arguably on the high side for a case of this type, we cannot say that the attorney fee award of $17,000.00, based upon a charge of $300.00 per hour, is an abuse of discretion, considering that counsel has effectively shown his experience in this area of the law and the time he expended, including a trial on the merits, with no countervailing evidence having been presented by Ford relative to excessive attorney fees.
In his answer to appeal, Mr. Bruce seeks additional attorney fees for post-trial work and work performed on appeal. Considering Mr. Bruce’s success, 19in part, on appeal, we award him an additional $1,500.00 in attorney fees for work done on appeal.
DECREE
Based on the foregoing, we affirm the judgment of the trial court in favor of George L. Bruce decreeing a rescission of the sale. The trial court’s award of $17,000.00 in attorney fees is also affirmed. The judgment of the trial court awarding Mr. Bruce $35,917.72 is reversed and vacated, and we render judgment herein in favor of George L. Bruce and against Ford Motor Company, Inc. and Marler Ford Company, Inc. in the amount of $20,917.72. Additionally, we render judgment herein in favor of Mr. Bruce in the amount of $1,500.00, representing attorney fees for work done on appeal. The costs of this appeal are assessed at seventy-five percent to Ford Motor Company, Inc. and Marler Ford Company, Inc. and twenty-five percent to George L. Bruce.
AFFIRMED IN PART;
REVERSED IN PART;
AND RENDERED.

. The price of the track and the related expenses included the cash price ($24,995.00), finance charges ($2,718.53), amounts paid to public officials ($740.10), and an extended warranty ($1,665.00), for a total of $30,118.63.

. The amount of the judgment represents the cash price, finance charges, fees, extended warranty, insurance costs, costs of repairs, and tire replacement.

. Ford makes much of its inability to duplicate the engine surge and of Mr. Bruce’s decline of Ford’s offer to install a "Vehicle Data Recorder (VDR)[.]” However, Ford’s expert, qualified in automotive mechanics and repair of Ford vehicles, Chris Furnas, testified that when Ford had the vehicle, they were using a diagnostic tool known as an "IDS” that actually provides more data and can document a vehicle’s condition better than a VDR. Additionally, he conceded that there can be a vehicle malfunction that occurs without a code being shown.