MOORE, J.
hThe plaintiffs filed a redhibition suit in the Shreveport City Court against the seller and the manufacturer of an all-terrain vehicle. After trial, the court rendered judgment for the plaintiffs against the seller and the manufacturer, rescinding the sale and ordering return of the purchase price. Additionally, the manufacturer was ordered to pay nonpecuniary damages, the plaintiffs’ attorney fees and the seller’s attorney fees incurred in defense of the suit. From this judgment, the manufacturer appealed. Both the plaintiffs and the seller answered the appeal requesting additional attorney fees to defend the judgment.
For the following reasons, we reverse the judgment in part, deleting the award of nonpecuniary damages; in all other respects, we affirm.
Facts
On or about February 16, 2011, John and Amanda Blair purchased a new, 2011 model, multi-terrain vehicle (“MTV”) from Downtown Tire and Accessories, LLC (“Downtown Tire”), for $8,739.97. An MTV is distinguished from a traditional ATV (all-terrain vehicle) by virtue of its bench seat capable of seating two adults side by side. This feature was important to the Blairs, who were avid hunters belonging to two hunting leases in Louisiana and Texas. The couple planned to use the vehicle primarily on the leases for hunting and recreation, and they envisioned using the vehicle to teach their young son (approximately eight months old at the time) about the outdoors.
The MTV purchased by the Blairs was manufactured by Bad Boy, Inc. (“Bad Boy”), located in Batesville, Arkansas, a company started in the late 1990s and noted for manufacturing “zero-turn radius” lawnmowers. The vehicle was shipped to Downtown Tire for delivery to the Blairs, but 12apparently never made it off the delivery truck due to a problem with the shifting mechanism.
The parties stipulated at the beginning of trial that the first MTV sold to the Blairs had a shifting problem, and the Blairs never took possession of the vehicle. As a result, a second, new 2011 MTV was sent to replace the first one and was shipped approximately two or three months later.
The parties also stipulated that the Blairs took possession of the second 2011 MTV, but this unit had problems with shifting and the brakes, the latter grabbing and not releasing. It was also discovered that a cotter pin on the right front wheel was missing. The cotter pin secured a nut holding the wheel assembly in place. Due to these problems, the Blairs requested a refund of the purchase price directly from Bad Boy. However, their request was refused, and subsequently, Bad Boy replaced the 2011 MTV with a new 2012 MTV model in which the cable linkage connecting gear shift to the transmis *1226 sion was redesigned and replaced with a steel rod linkage.
Although Bad Boy agreed to the factual stipulations regarding the defects in the first two 2011 MTVs, it objected to their relevance regarding the plaintiffs’ redhibition claim, which it contended involved only the 2012 MTV that was exchanged for the second 2011 MTV.
The 2012 MTV also exhibited problems and malfunctions, including difficulties in shifting. Blair complained that the MTV popped out of gear when he would try to shift into the low-gear range, which is used to traverse difficult terrain, to climb hills, or to carry a load. He returned the MTV to Downtown Tire to repair the problem. Downtown Tire’s mechanic, Randy Anthony, a/k/a “Turbo,” adjusted the linkage on the newly designed ^transmission by turning a nut designed for that purpose. The next day, Blair and Turbo test drove the MTV while John Blair’s friend Greg Hurst and Downtown Tire’s owner, Gayle Dixon, observed. During the test at Twelve Mile Bayou, the MTV popped out of gear twice, requiring Turbo to make additional adjustments to the linkage. The next day, Blair took the MTV to his deer lease in Texas. Although he was able to operate the MTV on Friday afternoon when he arrived at the camp, he testified that he had to use excessive force to shift into low range. The next morning, on the way to Blair’s deer stand, the MTV suddenly stopped running “as though a plug had been pulled.” It had to be towed back to camp.
Blair returned the MTV to Downtown Tire, where it was discovered that a 5 amp fuse, instead of a 30 amp fuse, had been mistakenly installed in the MTV, causing it to blow. The proper fuse was installed and the ignition started. According to Downtown Tire, Blair made no complaints about the shifting mechanism. Also, a malfunctioning temperature gauge indicated that the MTV was overheating, when, in fact, it was not. Blair left the MTV at Downtown Tire.
After consulting an attorney, Blair picked up the MTV, brought it home and parked it. He did not use the MTV again. According to the plaintiffs, Blair contacted Doug Brasell, Bad Boy’s sales representative, to report his dissatisfaction with the MTV. Blair again requested return of the purchase price. Brasell’s boss, Ryland Kieffer, plant manager of Bad Boy, refused to refund the purchase price and this suit ensued.
Trial was held on May 28, 2018. The court requested briefs at the conclusion of trial and the matter was taken under advisement. 14 Subsequently, the court rendered judgment in favor of the Blairs with a written ruling stating its findings and reasons for judgment.
The court found that the plaintiffs had proven their redhibition claim based upon evidence to support findings that the 2012 MTV was defective due to two minor defects and the unresolved problems with the shifting mechanism, apparently referring to the shifting problems also present in the two 2011 models. It concluded that the shifting mechanism was an essential function for the operation of the MTV, and these defects rendered the MTV unfit for its intended use. The court ordered Bad Boy and Downtown Tire to return the purchase price of $8,739.97 plus $393.13 for upgraded tires, and ordered Bad Boy to pay $6,500.00 to the Blairs for attorney fees and $3,000.00 in nonpecuniary damages. It also rendered judgment on Downtown Tire’s third party demand for expenses in defending the suit, casting Bad Boy in judgment for $4,000.00 in attorney fees.
Bad Boy filed this appeal. Both the Blairs and Downtown Tire answered the *1227 appeal requesting additional attorney fees to defend the judgment.
Discussion

Redhibition Claim

Bad Boy assigns four errors in the trial court’s judgment, contending that the plaintiffs were not entitled to a rescission of the sale and return of the entire purchase price because the 2012 MTV possessed only minor problems that were fixed, that the award of nonpecuniary damages was inappropriate, and that the attorney fee awards to the Blairs and to Downtown Tire are excessive.
|sBy its first assignment, Bad Boy alleges that the trial court committed manifest error by rescinding the sale of the 2012 MTV rather than ordering a reduction of the purchase price. It contends that there were only three minor problems Blair experienced with the 2012 MTV, and all three problems were easily addressed and repaired — namely, adjustment of the linkage in the shifting mechanism, replacement of an ignition fuse and replacement of a temperature gauge.
A seller warrants the buyer against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. La. C.C. art. 2520; Stuck v. Long, 40,034 (La.App. 2 Cir. 8/17/05), 909 So.2d 686, writ denied, 2005-2367 (La.3/17/06), 925 So.2d 546. Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Id.; Berney v. Rountree Olds-Cadillac Co., 33,388 (La.App. 2 Cir. 6/21/00), 763 So.2d 799. A defect is redhi-bitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. Thus, in an action for rescission because of a redhibitory defect, the court may limit the remedy of the buyer to a reduction of the price. La. C.C. art. 2541; Berney v. Rountree Olds-Cadillac Co., supra.
A buyer may bring an action against all sellers in the chain of sales back to the primary manufacturer to rescind the sale for breach of an implied | (¡warranty. Rey v. Cuccia, 298 So.2d 840, 845 (La. 1974). In a suit for redhibition, the plaintiff must prove: 1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; 2) the thing contained a nonapparent defect at the time of sale; and 3) the seller was given an opportunity to repair the defect. Vincent v. Hyundai Corp., 633 So.2d 240, 243 (La.App. 1 Cir. 1993), writ denied, 93-3118 (La.2/11/94), 634 So.2d 832.
Generally, the amount of damages a plaintiff can recover because of a redhibi-tory defect depends upon the type of seller involved. A good faith seller, namely, one who knew not of the vices in the thing he sold, is required to repair, remedy, or correct the vices or defects in the property that he sold. La. C.C. art. 2531. If he is unable to do so, he must restore the purchase price with interest and reimburse the reasonable expenses occasioned by the sale and those expenses incurred for the preservation of the property. La. C.C. art. 2531.
The seller who knows the vice of the thing that he sells and omits to declare it is answerable to the buyer in damages. *1228 In addition to restitution of the purchase price and repayment of expenses, including reasonable attorney fees, the bad faith seller is answerable for other damages. La. C.C. art. 2545. Under the proper circumstances, those damages can include nonpecuniary damages for mental anguish, aggravation, and inconvenience. Landaiche v. Supreme Chevrolet, Inc., 602 So.2d 1127, 1132 (La.App. 1 |7Cir.l992).
A manufacturer is conclusively presumed to have knowledge of defects in the object it manufactures. Young v. Ford Motor Co., 595 So.2d 1123, 1126 (La.1992). Thus, because of this presumption of knowledge, the manufacturer “is deemed to be in bad faith in selling a defective product” and is liable to the buyer for all damages recoverable under Art. 2545. Cox v. Lanier Business Prods., Inc., 423 So.2d 690, 693 (La.App. 1 Cir.1982), writ denied, 429 So.2d 129 (La.1983). The existence of a redhibitory defect is a question of fact and should not be disturbed in the absence of manifest error.
Of the three problems with the replacement MTV, the most significant issue related to the shifting mechanism, which Bad Boy contends the company addressed in the 2012 model by replacing the cable linkage with a steel rod linkage. It argues that Mr. Blair’s complaints about the vehicle popping out of gear were addressed by the adjustments made by Turbo at Downtown Tire. Both Turbo, the mechanic, and Gayle Dixon, the owner of Downtown Tire, testified that the adjustments fixed the shifting problem. When the plaintiff returned the MTV to Downtown Tire a second time because it suddenly stopped running, the problem was due to a 5 amp fuse installed rather than a 30 amp fuse. Mr. Blair did not complain about any difficulty in shifting at that time. Regarding the defective temperature gauge, the issue was simply a matter of a faulty gauge that was replaced.
Bad Boy contends that these three problems with the 2012 MTV do not support a rescission of the sale with return of the entire purchase price. Because these minor problems were addressed at no expense to the Blairs, it |Rargues that the trial court should have ordered simply a reduction in the purchase price not exceeding $1,500. It also claims the trial court abused its discretion because it failed to find that the defects in the 2012 MTV did not render it so useless that the Blairs would not have purchased it had it known of them.
Initially, we address the linchpin to Bad Boy’s first assignment, namely, its implied contention that the plaintiffs’ red-hibitory action seeking rescission and any evidence of defects in the MTV purchased should relate only to the 2012 MTV, inasmuch as the two prior 2011 models were replaced with the 2012 model. Implicit in this argument is an unstated claim that the parties reached a novation, by virtue of Bad Boy replacing the 2011 model with a 2012 model, such that any action for rescission of the sale does not pertain to the previous 2011 MTVs, and any evidence regarding their defects is irrelevant. See e.g., La. C.C. arts. 3080 and 3081. Thus, according to Bad Boy, the only issues involved in this action are the three minor defects with the 2012 model.
This position was rejected in Palmer v. Anchor Marine, Inc., 331 So.2d 114 (La.App. 1 Cir. 4/12/76), where the plaintiffs filed a suit against the seller and manufacturer for rescission of the sale of an ATV. The plaintiff encountered several problems with the first ATV he received from the seller and agreed to accept a replacement vehicle. Subsequently, he encountered several problems with the second ATV. The trial court found that the plaintiff *1229 would not have purchased the ATV had he known of the multitude of troubles he encountered and rendered judgment for the plaintiff.
On appeal, the defendant argued that when the plaintiff accepted the Rsecond ATV in replacement for the first, a novation occurred, and any question of redhibition as to the first ATV was not before the court. It argued that the only question was whether redhibition was possible as to the second ATV. The court rejected the novation argument, stating, “Otherwise, it would be very easy for dealers to trade off or exchange a new vehicle, just as defective as the first, for the first vehicle, and thus escape liability.” Id. at 117. The court also observed that a novation must be established by positive proof. See La. C.C. art. 1880. (“The intent to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed.”)
In this instance, even the testimony of the defense at trial indicates that Blair did not want the 2012 MTV as a replacement for the defective 2011 model. He requested a return of the purchase price from the company representative and plant manager. Kieffer, the plant manager of Bad Boy, testified that he refused to return the purchase price. He acknowledged that Blair accepted the 2012 MTV but was not happy about it.
We conclude that the trial court was not precluded from considering the issues with the two 2011 vehicles shipped to the plaintiffs in reaching its factual conclusions and rendering judgment. It is not clear from the written reasons how much weight the court gave to the stipulated facts that the two MTVs had defective shifting mechanisms. We note, however, that although the trial court mentioned the prior issues Blair experienced with the 2011 MTV in its written reasons, it focused primarily on the three issues that arose with respect to the 2012 model. It found that the issues regarding the fuse and gauge were easily resolved; however, when combined with the 110unresolved problems with the shifting mechanism in the newly upgraded and redesigned 2012 model, the vehicle was unfit for its intended use and thus redhibi-tory. It specifically noted that multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Young v. Ford Motor Co., supra.
As previously noted, the problems with shifting in the first two MTVs were stipulated to by the parties. It is clear from the record that the shifting problem was of such magnitude that Bad Boy redesigned the shifting mechanism and stipulated as to its defect in the two 2011 MTVs. With respect to the 2012 model, John Blair testified that he received it shortly before October 2, 2011. He immediately began using it, and he had trouble shifting into low gear and reverse. When he made adjustments per the recommendations of Randy Anthony, he experienced the converse problem of not being able to shift into high gear. Greg Hurst, a friend and hunting partner, testified that he saw Blair having difficulty keeping the MTV in low gear needed to climb a hill. Additionally, the temperature gauge on the MTV falsely indicated that the engine was running hot and had to be replaced.
Blair returned the vehicle to Downtown Tire where the mechanic, Turbo, made adjustments. The two took the vehicle out for a test drive at Twelve Mile Bayou, where the MTV popped out of gear. Turbo adjusted it. They rode around a little more and it popped out of gear again when they were in the low gear range. Blair left the machine with Downtown Tire to fix the problem. He picked it up the next day to bring with him to his hunting lease in *1230 Texas. He drove the vehicle some that afternoon when heJjj arrived at the lease. The next morning, while Blair was on the way to his deer stand, the MTV suddenly stopped running and had to be towed back to camp. He returned the MTV to Downtown Tire where it was determined that a fuse of incorrect amperage had been installed in the MTV and had blown. Although he did not report any problems about shifting this time, Blair testified at trial that while the MTV would shift into low gear and reverse, it still had to be forced into gear with abnormal difficulty.
¡Blair testified that he suffered mental anguish over the inconvenience and trouble he had with the MTV, including ribbing from co-employees. He said he would not have purchased any of the three MTVs had he known of their defects.
The trial court specifically found that the evidence did not support Turbo’s testimony that the problem with shifting, i.e., the MTV popping out of gear when in the low range, was fixed by adjusting the linkage. It also noted that Kieffer testified that a user should not have to force the shifter into- the low range gear to use it. Although Bad Boy notes that Blair no longer complained about the shifting mechanism when he returned the MTV regarding the ignition fuse problem, the trial court found more credible Blair’s testimony that the problem was not resolved. Where a fact finder’s conclusion is based on its decision to credit the testimony of one of two or more witnesses, that determination can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Pope v. Prunty, 37,395 (La.App. 2 Cir. 8/20/03), 852 So.2d 1213, writ denied, 2003-2496 (La.11/26/03), 860 So.2d 1137.
We conclude that the trial court did not manifestly err in concluding 112that the 2012 MTV presented problems with the shifting mechanism and other minor problems that rendered the vehicle unfit for its intended purpose. It is particularly noteworthy that Blair was never able to use the MTV without experiencing some problem that required that he return it to the seller. Therefore, the trial court did not manifestly err by granting a rescission of the sale under the circumstances of this case and ordering a return of the entire purchase price. The previous problems with the two 2011 MTVs, both primarily related to shifting, coupled with the continued problem with shifting in the 2012 model, rendered the MTV unfit for its intended purpose. This assignment of error is without merit.

Nonpecuniary Damages

By its second assignment of error, Bad Boy contends that the award of non-pecuniary damages in this case was inappropriate and the trial court abused its discretion in making the award. We agree.
The trial court awarded the plaintiffs $3,000 in nonpecuniary damages on the basis of the plaintiffs’ testimony that they purchased the MTV for use on their hunting leases and for riding around the neighborhood and as a result of the defective MTVs, the Blairs were deprived of using the vehicle for hunting and their enjoyment of the outdoors on their two deer leases as well as riding around the neighborhood. They also planned to use the MTV when teaching their son about the outdoors and hunting. Additionally, they suffered embarrassment, mental stress, and great inconvenience over the purchase.
La. C.C. art. 1998 provides:
Damages for nonpecuniary loss may be recovered when |isthe contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the for *1231 mation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
In Jones v. Winnebago Indus., Inc., 47,137 (La.App. 2 Cir. 5/16/12), 92 So.3d 1113, after reviewing the Revision Comments to Art. 1998 and the Supreme Court’s interpretation of Art. 1998 in Young v. Ford Motor Co., supra, we concluded that the legislature chose to preserve the substance of source Art. 1934(3) as interpreted in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), thereby permitting recovery of nonpecuniary damages in situations where nonpecuniary interests constitute at least one of the significant interests that the obligee intended to gratify. The latter might be classified as a hybrid, or mixed, situation where obligees who enter the contract to gratify both pecuniary and nonpecuniary interests are permitted the recovery of nonpecuniary damages.
A “nonpecuniary loss” means damage of a moral nature which does not effect a “material” loss or tangible part of a person’s patrimony. See Saul Litvinoff, “Moral Damages,” 38 La. L.Rev. 1 (1977). The gratification of a nonpecuniary interest means one intended to satisfy an interest of a spiritual order, such as a contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters of sentimental value. In such a case, upon the obligor’s failure to perform, the obligee may recover the damages he has sustained of a nonpecuniary— or “moral” — nature. See Litvinoff, supra. Thus, if a horse is bought for the purpose of 114showing it at an exhibition, the purchaser is entitled to recover for his disappointment and inconvenience if the contract is rescinded because of a redhibitory vice. See Smith v. Andrepont, 378 So.2d 479 (La.App. 1 Cir.1979), writ denied, 380 So.2d 102 (La.1980).
Under La. C.C. art. 1998, if it is established that the obligee intended to gratify a significant nonpecuniary interest, and the nature of the contract supports this, and the obligor either knew or should have known that failure to perform would cause nonpecuniary loss to the obligee, then the requirements for recovery of non-pecuniary damages are satisfied. Young, supra; Davis v. Sweeney, 44,997 (La.App. 2 Cir. 3/03/10), 31 So.3d 1184; Stonecipher v. Mitchell, 26,575 (La.App. 2 Cir. 5/10/95), 655 So.2d 1381. Whether the gratification of some nonpecuniary interest is a principal object of a contract is a question of fact. Id.
In Young, supra, the court illustrated, by way of example, the distinction between pecuniary and nonpecuniary interests:
Although the purchase of a new truck or car may be prompted by both the pecuniary interest of securing transportation and the nonpecuniary interest relating to enjoyment, taste, and personal preference of owning and driving the chosen vehicle, the nature of the contract is primarily pecuniary (unless other factors evidence a different conclusion). Contrast the contract of purchase made in a standard new car sale with a contract for purchase of an antique car that, while it might be driven on the streets, represents the obligee’s desire to own, and perhaps to show, a distinctive, unique automobile. Or contrast the traditional new car purchase contract with a contract for purchase of a specifically-designed, custom-built vehicle.
Id., 595 So.2d at 1133.
In Young, supra, the court found that neither the nature of the contract, i.e. the *1232 purchase of a new pickup truck, nor the facts and [ 1scircumstances surrounding the formation of the contract, demonstrated that Young purchased the new pickup truck from Bordelon Motors for a significant nonpecuniary purpose. Although Young testified that he wanted a larger cab area so that he could lie down on trips if his back started to bother him, that desire seemed more incidental in nature than that which would constitute a significant nonpecuniary interest in purchasing the truck. The rest of his testimony concerned the need to use the truck in his service station business to haul tires or to transport customers while their cars were being fixed. Even his plans for recreational use of the vehicle (i.e., fishing trips) constituted the pecuniary interest of requiring suitable transportation to haul his fishing boat.
In Jones, supra, a panel from this court concluded that the trial court was not manifestly erroneous in its determination that an award of nonpecuniary damages was not appropriate where the plaintiffs purchased a defective Winnebago. The Winnebago that the plaintiffs purchased from the dealer was neither custom-built nor specifically designed. While plaintiffs did have a valid nonpecuniary interest, i.e., to spend quality time with their children (and family and friends) traveling, camping and enjoying outdoor activities, the court noted that most if not all purchasers of RVs have the same or similar interests. “This does not change the fact that the primary purpose of the purchase of a recreational vehicle is transportation/recreational travel.” Id. at 1122.
Based on our review of this jurisprudence regarding nonpecuniary damages in redhibition actions involving motor vehicles and recreational h ¿vehicles, we conclude that nonpecuniary damages are not appropriate in this case because, notwithstanding their recreational use of the MTV in hunting, camping and enjoying the outdoors, “the primary purpose of a recreational vehicle is transportation/recreational travel.” Jones, supra, 92 So.3d 1113, 1122; see also, Palmer v. Anchor Marine, Inc., supra (in an action for rescission of the sale of an ATV, the trial court did not err in denying the plaintiff damages for inconvenience, embarrassment and humiliation).
ATVs, including the multi-terrain vehicle purchased by the Blairs in this case, are commonly used by hunters for expediency in getting to and from hunting sites in which distance or terrain make walking to the hunting sites impractical. The Blairs testified that the primary purpose of their purchase of the MTV was to use it for hunting and enjoyment of the outdoors. Thus, although hunting itself is a nonpecu-niary enjoyment, the primary purpose in purchasing this type of vehicle is transportation, whether it be to get to or from a hunting site, or simply to travel around in the outdoors. For this reason, an award of nonpecuniary damages is not warranted.
Accordingly, we reverse that part of the judgment.

Attorney Fees

By its final two assignments of error, Bad Boy contends that the trial court abused its discretion in the attorney fee awards to the Blairs and Downtown Tire. The trial court awarded the plaintiffs $6,500 in attorney fees and Downtown Tire $4,000 in attorney fees. Bad Boy argues that the fees awarded are unreasonable under the 10 factors set out by the Supreme Court in State v. Williamson, 597 So.2d 439 (La.1992). These factors 117include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the *1233 legal knowledge, attainment, and skill of the attorney; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge. Bad Boy suggests that the attorney fee award to the plaintiffs should not have exceeded $3,500, and the award to Downtown Tire should be reduced to $8,000.
After review of this record and considering the factors enumerated above, we find no abuse of discretion that would require a reduction of the awards for attorney fees to the plaintiffs and Downtown Tire. Although Bad Boy has listed the factors a trial court should consider, it has not shown how or where these factors were not taken into account by the trial court such that the amounts constituted an abuse of its discretion.
We conclude that the attorney fee awards in this case are fairly substantial, given the relatively straightforward facts and legal issues involved in the litigation. Nevertheless, they are not unreasonable, and we find no abuse of discretion. This assignment is without merit.
Finally, both the plaintiffs and Downtown Tire have answered the appeal requesting additional attorney fees. Given the considerable amount awarded by the trial court, we decline to award additional attorney fees to defend the judgment on appeal.
Conclusion
For the foregoing reasons, we affirm the judgment of the trial court in favor of the plaintiffs and against Downtown Tire and Bad Boy, Inc., | ^rescinding the sale of the MTV and ordering a return of the purchase price and the cost associated with the purchase of upgraded tires, and we affirm the judgment against Bad Boy, Inc., awarding attorney fees to the plaintiffs and Downtown Tire. We reverse and amend the judgment against Bad Boy, Inc., dismissing the award of nonpecuniary damages to the plaintiffs. Appellate costs are assessed one-half to the plaintiffs and one-half to Bad Boy, Inc.
REVERSED AND AMENDED IN PART; AS AMENDED, AFFIRMED.