STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2025 CA 0674

BARBARA W. FLAKE

VERSES

TEAM TOYOTA, TOYOTA MOTOR CORPORATION, & TOYOTA
MOTOR SALES, U.S.A., INC.

Judgment Rendered: FEB 0 9 2026

* * * * *

ON APPEAL FROM
THE TWENTY-THIRD JUDICIAL DISTRICT COURT, DIVISION B
IN AND FOR THE PARISH OF ASCENSION
STATE OF LOUISIANA
DOCKET NUMBER 121,796

HONORABLE CODY M. MARTIN, JUDGE PRESIDING

* * * * *

Gary N. Boutwell, II　　　　　　Counsel for Appellant
Hester Dornan Lemoine　　　　　Barbara W. Flake
Baton Rouge, Louisiana
　　　and
Joseph E. Ritch
Corpus Christi, Texas


Joseph J. Cefalu, III　　　　　　Counsel for Appellee
Chris D. Billings　　　　　　　P&P Automotive Interests, Inc.
Alexa Candelora
Robert Moseley Schmidt
Baton Rouge, Louisiana

**BEFORE: MILLER, EDWARDS, AND FIELDS, JJ.**

Miller, J concurs

**FIELDS, J.**

Plaintiff, Barbara W. Flake, appeals a February 28, 2025 summary judgment granted in favor of defendant, P&P Automotive Interests, Inc., which dismissed all of Ms. Flake's claims against P&P Automotive Interests, Inc. with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 17, 2018, Ms. Flake, filed a petition for damages naming as defendants, P&P Automotive Interests, Inc. ("P&P"),[1] Toyota Motor Corporation, and Toyota Motor Sales, U.S.A., Inc. In the petition, Ms. Flake alleged that on October 14, 2015, she purchased a 2015 Toyota Highlander from the Team Toyota dealership in Baton Rouge, Louisiana. Ms. Flake further alleged that on November 12, 2017, she pulled the Highlander into a driveway, thought she placed the car into park, engaged the parking brake, and exited the vehicle while leaving it running. Ms. Flake alleged that after she returned to the vehicle and removed the key, the vehicle began to roll rearward causing her physical injuries. Due to this incident, Ms. Flake asserted the vehicle's ignition and parking brake systems were defective, which was the basis of her redhibition claim. Ms. Flake further alleged that two months prior to the incident, on September 12, 2017, P&P performed a multi-point inspection of the vehicle, which included inspection of the parking brake, and deemed the parking brake fully operational. Ms. Flake asserted that during this inspection, P&P failed to detect and warn Ms. Flake of the defective parking brake. Ms. Flake also asserted P&P violated the Louisiana Products Liability Act (LPLA), specifically the breach of express warranties and inadequate warning, and is liable to her for general negligence.

---

[1] P&P was incorrectly named as Team Toyota Realty, L.L.C. in the original petition for damages. Following P&P's answer, Ms. Flake amended her petition to name P&P as a defendant in place of Team Toyota Realty, L.L.C.

Following discovery and the dismissal of the other two defendants, Toyota Motors Sales, U.S.A., Inc. and Toyota Motor Corporation, from the suit with prejudice, P&P filed a motion for summary judgment on October 31, 2024, asserting it was entitled to judgment as a matter of law because Ms. Flake's allegations of a defect in the parking brake lacked evidentiary support. In its memorandum in support of its motion, P&P argued that because Ms. Flake did not have evidence to support her claim that a defect existed in the parking brake of her Highlander at the time of the accident, her claims of redhibition, general negligence, and violations of the LPLA necessarily failed. In support of its motion for summary judgment, P&P attached, among other documents, the deposition transcript of Ms. Flake who stated that she never experienced or reported an issue with the parking brake from the time of purchase until the time of the accident; as well as the affidavit of a registered professional mechanical engineer, who personally evaluated the Highlander and found no defect in the vehicle's parking brake.

On December 30, 2024, Ms. Flake filed an opposition to P&P's motion, asserting there existed genuine issues of material fact that precluded the granting of summary judgment in P&P's favor. Ms. Flake argued that contrary to P&P's assertion, she possessed substantial evidence of the defect in her Highlander. Specifically, Ms. Flake referenced two videos created by herself and her husband on December 26, 2024, which she asserted exemplified the obvious issues with the vehicle's parking brake. Ms. Flake further referred to the affidavit of Jerry Zamora, an expert mechanic and automotive specialist, who attested that the December 26, 2024 videos showed an obvious defect with the parking brake system.

Ms. Flake also requested a continuance of the hearing on the motion due to scheduled corporate depositions of P&P and she filed a separate motion to continue for the same reason. Following a hearing, the trial court continued the hearing on P&P's motion for summary judgment to February 24, 2025. In its ruling, the trial

court also ordered that any additional evidence that may be submitted in opposition to P&P's motion for summary judgment be restricted to the corporate deposition of P&P and Mr. Zamora's opinions regarding the corporate deposition. After the depositions were taken, P&P moved to supplement its motion for summary judgment with the entire transcripts of the corporate depositions held on January 29, 2025.

On February 10, 2025, Ms. Flake filed a supplemental memorandum in opposition to P&P's motion for summary judgment. Within the memorandum, Ms. Flake asserted that P&P's failure to measure her Highlander's brake shoe thickness and disc rotators directly impacted the parking brake function, and without a proper measurement, P&P was negligent in its inspection of her parking brake and its effectiveness. Ms. Flake also raised for the first time an objection to a certain attachment to an affidavit filed in support of the original motion for summary judgment.

The hearing on P&P's motion was held on February 24, 2025. We note that there was no ruling on Ms. Flake's evidentiary objection at the hearing and neither party requested such a ruling. Following party arguments, the trial court granted summary judgment as to the claims for redhibition and negligence, and dismissed all of Ms. Flake's claims against P&P.[2] A written judgment reflecting this ruling was signed by the trial court on February 28, 2025. It is from this judgment that Ms. Flake appeals.

Ms. Flake asserts several assignments of error, including the trial court's finding that Ms. Flake failed to prove a defect existed in the parking brake system at the time the vehicle was sold to her, or at the time the vehicle was inspected by P&P in September 2017. Ms. Flake further asserts the trial court erred in not finding a

---

[2] Ms. Flake and P&P stipulated that Ms. Flake had previously dismissed her LPLA claims against P&P.

duty or breach thereof by P&P during the September 2017 multi-point inspection, and in dismissing Ms. Flake's claim for redhibition.

## LAW AND ANALYSIS

Summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action ... and shall be construed to accomplish these ends." La. Code Civ. P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by trial courts to determine whether summary judgment is appropriate. **Bass v. Disa Global Solutions, Inc.,** 2019-1145 (La. App. 1st Cir. 6/12/20), 305 So.3d 903, 906, writ denied, 2020-01025 (La. 11/4/20), 303 So.3d 651. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3).

The only documents that may be filed or referenced in support of or in opposition to the motion include pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified copies of public documents or public records, written stipulations, and admissions. See La. Code Civ. P. art. 966(A)(4)(a). If an objection to a document is raised in a timely filed opposition or reply memorandum, the court shall consider the objection prior to rendering judgment and state on the record or in writing whether the court sustains or overrules the objections raised. La. Code Civ. P. art. 966(D)(2).

The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent's claim, action, or defense. See La. Code Civ. P. art. 966(D)(1). If proven, the burden shifts to the adverse party to

5

produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1); **Bass**, 305 So.3d at 906.

In ruling on a motion for summary judgment, the trial court's role is not to weigh the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Quereau v. Sam & Brett LLC**, 2024-0243 (La. App. 1st Cir. 10/3/24), 405 So.3d 847, 852, citing **Kasem v. State Farm Fire and Casualty Company**, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So.3d 6, 12-13. A genuine issue is one as to which reasonable persons could disagree; if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is material when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. See **Kasem**, 212 So.3d at 13, quoting **Smith v. Our Lady of the Lake Hospital, Inc.**, 93-2512 (La. 7/5/94), 639 So.2d 730, 751. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. **Quereau**, 405 So.3d at 852.

Ms. Flake's redhibition claim asserted against P&P requires Ms. Flake to show a non-apparent defect existed in the Highlander at the time she purchased the vehicle. See La. Civ. Code arts. 2520 & 2530. "Defect" as contemplated in article 2520 means a physical imperfection or deformity or a lacking of the necessary components or level of quality. **Cazaubon v. Cycle Sport, LLC**, 2011-0289 (La. App. 1st Cir. 11/9/11), 79 So.3d 1063, 1065. Moreover, Ms. Flake's negligence claim alleges P&P's failure to detect and advise of a defect in her braking system, which likewise necessitates the existence of an identifiable defect at the time of the September 2017 inspection. P&P asserted in its motion for summary judgment that Ms. Flake cannot show a defect existed in her Highlander at either the time of

6

purchase or on September 12, 2017, the date of the multi-point inspection, and therefore summary judgment is appropriate.

In support of its argument, P&P relied on the affidavit of Jeff Earnest, a Service Manager employed by P&P. Mr. Earnest attested that P&P is a retail distributor of automobiles in Louisiana and when P&P purchases vehicles from wholesalers or other dealers, it performs, as a matter of routine practice, inspections on the vehicles, which include checking the braking systems. He stated that when P&P took possession of the Highlander in August 2015, the parking pawl, service brake (*i.e.*, brake pedal), and parking brake were fully functional and contained no defects. Mr. Earnest further stated that no modifications or alterations were done to the vehicle by P&P. Mr. Earnest attested that it is standard practice by P&P to offer and perform a complimentary visual inspection of vehicles when they are brought in for maintenance, which was performed on the Highlander at the time of Ms. Flake's September 2017 oil change. He stated that the visual inspection included looking at the parking brake cables and pressing the parking brake pedal to ensure it showed resistance and engagement. Additionally, he testified that the inspection does not include diagnostics of any kind and customers are informed of the type of inspection happening at the time of inspection.

There were three attachments to Mr. Earnest's affidavit, including excerpts from the owner's manual for a 2015 Toyota Highlander, which noted that for "parking the vehicle", the driver must depress the brake pedal, shift the shift lever to "P," set the brake, then turn the engine to the "LOCK" position to stop the engine. The manual further warned the operator that when parking the vehicle, the shift lever must "always" be shifted to "P" because failure to do so may cause the vehicle to move or the vehicle may accelerate suddenly if the accelerator pedal is accidentally depressed. Also included as an attachment to Mr. Earnest's affidavit was the receipt for the oil change Ms. Flake received at P&P on September 12, 2017, which noted,

7

"COMPLIMENTARY MULTI-POINT INSPECTION – VISUAL INSPECTION ONLY. DOES NOT INCLUDE DIAGNOSTICS FOR ANY MECHANICAL, ELECTRICAL, NOISE OR OTHER CONCERNS." Finally, a Carfax report of a 2015 Toyota Highlander matching the VIN number of Ms. Flake's Highlander was attached, showing that the vehicle had undergone multiple vehicle inspections not only by P&P but also by third parties within the two years Ms. Flake owned the vehicle.

The motion was also supported by the affidavit of Allen Brogdon, a motor vehicle inspector employed by P&P, who explained the various requirements of vehicle safety and emissions inspections required by the State of Louisiana. Mr. Brogdon attested that this type of inspection includes pressing the parking brake pedal, ensuring that the pedal remains engaged after being pressed, and then shifting the vehicle from park to drive to ensure the parking brake holds the vehicle. Mr. Brogdon concluded that a vehicle cannot pass this type of inspection if its parking brake is not functional.

Also attached in support of P&P's motion for summary judgment was the affidavit of Harold Clyde, a registered professional mechanical engineer and former Technical Analysis Manager at Toyota Motor Sales, U.S.A., Inc., who attested that on October 23, 2018, he personally evaluated Ms. Flake's Highlander on the same sloped driveway where the accident occurred. Mr. Clyde attested that during the evaluation, he tested the parking pawl, which he found to be fully functioning, meaning that the vehicle remained in place when in "Park." He further stated that he performed this evaluation at various areas of the sloped driveway and the results remained the same, i.e., the Highlander remained in place when the vehicle was placed in "Park," even when the service and parking brakes were disengaged. Additionally, he stated that he evaluated the service brake, or brake pedal, to determine if the vehicle remained in place once the brake was engaged regardless of

8

the transmission setting. Mr. Clyde noted that he performed his evaluation in every transmission setting and the results were the same each time — the Highlander remained in place on the driveway when its service brake was engaged even when the parking brake was disengaged and regardless of whether the vehicle was placed in "Neutral," "Drive," or "Reverse." Finally, Mr. Clyde tested the parking brake by first visually inspecting the parking brake and cables, which is the usual and customary inspection of a parking brake, and observed no evidence of damage. Then, he confirmed that there was sufficient resistance when applying the parking brake, as in, when engaging the parking brake pedal, the pedal remained engaged upon removing his foot. Last, he shifted the vehicle out of "Park" and removed his foot from the service brake with the parking brake engaged. He noted the parking brake held the vehicle in the same place on the sloped hill, even when the service brake was disengaged and regardless of what gear the vehicle was in, "Park," "Neutral," or "Drive." Mr. Clyde concluded by stating that the results of these evaluations confirm that the parking pawl, service brake, and parking brake of Ms. Flake's Highlander were fully functional and non-defective. More specifically, he stated that when on the sloped hill, the vehicle stayed in place (and would have stayed in place on November 12, 2017) if: 1) the vehicle was placed in "Park"; 2) the service brake was engaged; 3) the parking brake was engaged; or 4) any combination of the above.

P&P further included the transcript of the deposition testimony of Ms. Flake. Ms. Flake stated that she bought the Highlander in August or September 2015 and took possession of it in September 2015. She testified that during her ownership of the vehicle, nothing ever broke or needed fixing. She further testified that she used the parking brake every time she parked the vehicle and it always held. She recalled that her husband commented to her about the parking brake on one or two occasions, noting it was "like it didn't have any tension to it or something." However, he never

looked to see if there was anything wrong with the brake pedal, never took it in to be serviced, and "really wasn't that concerned because … it would always hold when [Ms. Flake] pressed it, every time [she] pressed it."

Ms. Flake testified that her husband performed most of the maintenance on the Highlander, including oil changes and tire rotations. However, on September 12, 2017, Ms. Flake took the Highlander in for an oil change because her husband did not have time to do it. She testified that all she expected to have done on that date was an oil change; she did not expect P&P to do anything else, and she did not voice any concerns about the vehicle. When asked to review the oil change receipt, Ms. Flake stated she understood that P&P performed a visual inspection of the vehicle only and that the inspection did not include any diagnostics for any mechanical, electrical, noise, or other concerns.

Ms. Flake testified that following the oil change, she used her vehicle and its parking brake daily without incident. Ms. Flake testified that on the day of the accident, she and her husband drove the Highlander to church and Waffle House and the parking brake operated without incident. She testified that she drove the Highlander to her daughter's house that afternoon. Ms. Flake stated that when she arrived at the house, she pressed the parking brake and exited the vehicle. Ms. Flake testified that she did not remember if she placed her car in park or turned it off. Additionally, she stated that she could not remember what she did when she returned to the vehicle, but said that she thought she was getting back inside of the vehicle when the Highlander started to roll. However, upon reviewing the surveillance footage taken at her daughter's house on the day of the accident, Ms. Flake observed she remained standing on the ground and was reaching into the vehicle when it started to move.

Ms. Flake's responses to interrogatories propounded by P&P were also attached as evidence in support of P&P's motion for summary judgment. One

interrogatory asked Ms. Flake to identify the alleged inherent defect in the vehicle, to which Ms. Flake replied in part:

> [P]laintiff states that [P&P], performed a multi-point inspection on September 12, 2017 wherein [P&P] specifically inspected the operation of the park brake. [P&P] indicated that the vehicle's parking brake was fully operational and working. This simply was not accurate in that the parking brake failed to keep the vehicle stationary and allowed the vehicle to roll rearward during the subject incident.

Finally, the deposition transcript of Joshua Snyder, a neighbor of Ms. Flake's daughter who helped rescue Ms. Flake following the accident, was also attached as evidence in support of P&P's motion for summary judgment. Mr. Snyder testified that he could not recall certain details of the scene when he arrived after hearing another neighbor yell for help. However, after being shown his previously executed affidavit, he testified that when he arrived where the car and Ms. Flake came to a stop, the vehicle was turned off, but it was shifted into a gear other than "Park," although he could not remember which gear.

In opposition to the motion for summary judgment, Ms. Flake relied on two videos she created on December 26, 2024, demonstrating the effectiveness of the parking brake. In one video, the parking brake held the vehicle after it was engaged, and in the other, it did not. She further relied on the affidavit of Jerry Zamora, an automotive expert with over thirty-two years of experience in vehicle mechanics, inspection, and safety standards. Mr. Zamora attested that he reviewed the December 26, 2024 videos of Ms. Flake and Mr. Flake operating the parking brake of the Highlander; the surveillance video dated November 12, 2017, capturing the incident at issue; and documentation indicating that a multi-point inspection was performed by P&P on September 12, 2017. Mr. Zamora attested that in the video showing the parking brake working properly, it was evident that Ms. Flake had to press the parking brake pedal of the vehicle all the way to the floor to engage it. Mr. Zamora found this to indicate an issue with the tension and responsiveness of the

11

parking brake mechanism. He opined that such a condition is not consistent with the proper functionality of a parking brake in good working condition. In the video of Mr. Flake, despite audible clicks indicating engagement of the parking brake, the vehicle immediately began rolling backward once his foot was removed from the brake pedal. Mr. Zamora found this to demonstrate a complete failure of the parking brake to perform its intended function of holding the vehicle stationary. Mr. Zamora also attested that the surveillance footage from November 12, 2017, clearly depicts the vehicle remaining stationary for over a minute after Ms. Flake parked it on an inclined driveway and engaged the parking brake. He described the video as showing the vehicle suddenly rolling backward after Ms. Flake leaned in and stated the sudden movement unequivocally indicates that the parking brake failed entirely despite being engaged. Mr. Zamora noted that the multi-point inspection of this vehicle by P&P purportedly included an inspection of the parking brake operation, which was marked as functional; however, Mr. Zamora opined that based on the videos of the parking brake engagement and his own expertise, it was evident that the parking brake was not functioning as intended at the time of the accident. Mr. Zamora concluded that had P&P properly inspected or tested the parking brake of the vehicle as part of its multi-point inspection, the defect would have been identified and corrective measures could have been taken to prevent the failure.

In Mr. Zamora's supplemental affidavit following the corporate depositions of P&P, he attested that P&P's failure to inspect and measure the brake shoe thickness of the Highlander led to a total lack of identification of issues with the parking brake system. Also, Mr. Zamora stated that failure to ensure proper brake shoe thickness can result in an inability to hold the vehicle in place when parked.

Following our *de novo* review of the motion, we conclude that the trial court did not err in granting summary judgment in favor of P&P. P&P pointed out the absence of factual support for an essential element of plaintiff's claims — an actual

12

defect in the Highlander. Without proof of a defect at the time of purchase, Ms. Flake cannot prove her redhibition claim. Furthermore, without proof of a defect around the time of the September 2017 multi-point inspection, she cannot show that P&P was negligent in failing to discover or warn Ms. Flake of a defect. Thereafter, the burden shifted to Ms. Flake, and we conclude that Ms. Flake failed to produce evidence sufficient to establish the existence of a genuine issue of material fact. See La. Code Civ. P. art. 966(D)(1).

Plaintiff produced no evidence as to any actual defect in the vehicle either at the time of purchase or at the time of the September 12, 2017 inspection, highlighting instead the failure of the brake on the day of the accident. Furthermore, Ms. Flake's testing of the vehicle was accomplished seven years after the accident under unknown conditions and showed the parking brake both holding and not holding the vehicle in place. Moreover, Ms. Flake's expert, Mr. Zamora, provided no finding of a defect following personal evaluation; he only opined that based on Ms. Flake's videos, there was an issue with the braking system. Mr. Zamora further noted the risks and hazards associated with worn brake shoes and rotator discs; however, he failed to find that the Highlander suffered any of these defects, either at the time of the inspection or on the date of the incident, as he did not inspect the vehicle.

Although factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. **Salvador v. Main Street Family Pharmacy, L.L.C.,** 2017-1757 (La. App. 1st Cir. 6/4/18), 251 So.3d 1107, 1112. Furthermore, circumstantial evidence may establish the existence of a genuine issue of material fact to defeat summary judgment, but the response of the adverse party must set forth specific facts showing a genuine issue of fact exists. **McLin v. Stafford,** 2019-0441 (La. App. 1st Cir. 12/27/19), 292 So.3d 566, 569. The affidavits of Mr. Zamora in

opposition to the motion set forth conclusory allegations and unsupported speculation, and thus, do not raise any material facts that would preclude summary judgment. **Wolfe v. Quad-Area Community Action Agency, Inc.**, 2022-0203 (La. App. 1st Cir. 9/16/22), 352 So.3d 992, 996, writ not considered, 2022-01625 (La. 1/11/23), 352 So.3d 562. Accordingly, we find no genuine issue of material fact remaining. Summary judgment was appropriate.

## CONCLUSION

For the aforementioned reasons, we affirm the trial court's February 28, 2025 judgment granting summary judgment in favor of P&P Automotive Interests, Inc. and dismissing all of Barbara W. Flake's claims against P&P Automotive Interests, Inc. Costs of the appeal are assessed against appellant, Barbara W. Flake.

**AFFIRMED.**